Walter B. HAMM, Plaintiff–Appellant,

v.

Marvin RUNYON, Postmaster General, Defendant–Appellee.

No. 94–2121.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 28, 1994.

Decided April 4, 1995.

---

Roxy M. Schumann, Davenport, IA (argued), for Walter B. Hamm.

Gerard A. Brost, Deborah W. Carlson (argued), Office of U.S. Atty., Peoria, IL, David G. Karro, U.S. Postal Service, Office of Labor Law, Washington, DC, for Marvin T. Runyon.

Before EASTERBROOK, MANION, and ROVNER, Circuit Judges.

MANION, Circuit Judge.

Walter B. Hamm appeals a grant of summary judgment in favor of Marvin T. Runyon, Postmaster General of the United States Postal Service ("Postal Service").[1] Hamm filed a complaint against the Postal Service under sections 501 and 505 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794a (the "Act") and the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., claiming that he was fired from his job at the Rock Island, Illinois Post Office because he was disabled. The district court found that Hamm had presented insufficient evidence that he was disabled within the meaning of the Act and granted summary judgment in favor of the Postal Service. We affirm.

---

1. Since section 505(a)(1) of the Act borrows the procedures and remedies of Title VII, the exclusive remedy for a claim that a federal agency discriminated against a disabled employee or job applicant is a suit against the agency's head. *McGuinness v. United States Postal Service*, 744 F.2d 1318, 1322 (7th Cir.1984).

## I. Background

Hamm was employed as an electronic technician at the Rock Island, Illinois Post Office beginning on February 27, 1988. His first 90 days were to consist of a probationary period that allowed the Post Office an opportunity to observe his work habits and attendance. Hamm had a history of attendance problems at a previous job but nevertheless assured James L. Simoens, the Postmaster at the Rock Island facility, that he would be regular in attendance if hired.

It is undisputed that Simoens was very strict about attendance. This was reflected in a policy that he instituted at the Rock Island Post Office known as ISAW (Image, Safety, Attendance, and Work Abilities). This policy had a direct impact on probationary employees. Simoens testified that he wanted new employees working with him to be prompt and regular in their attendance. Anything less than prompt and regular (defined as working as scheduled) could be grounds for corrective action, up to and including discharge. Both Simoens and George Harl, manager of plant maintenance at Rock Island and Hamm's immediate supervisor, informed Hamm prior to employment that the Rock Island Post Office required punctual and regular attendance.

Approximately three weeks after he started work, Hamm began to have problems with a previous arthritic condition and started experiencing some difficulty with his walking. Harl acknowledged that there was a difference in Hamm's physical appearance and inquired about his condition. Hamm merely responded that "it was nothing" and that "it just would pass." Harl stated that he believed that Hamm's problems were short-term and that Hamm could work around the problem. Hamm also testified that, at all times pertinent to this action, he did not perceive himself as having a disabling condition and that he was capable of doing, and never refused to do, any function of his job.

On March 21, 1988, Hamm reported eleven minutes late to work. He explained that he had overslept. Harl took Hamm aside for an "official job discussion" two days later to emphasize the need to be punctual. On April 14, 1988, Hamm was late again, this time by 44 minutes. Hamm explained that he had again overslept but later added that this was due to several days of pain resulting from his arthritis. Finally, on April 18, 1988 while Hamm was at work, he requested and was granted an immediate leave of absence (sick leave) for one and one-half hours in order to go see his doctor about his arthritis.

On April 27, 1988, Harl completed a 60-day probation period evaluation noting that Hamm had three unscheduled absences. Harl reported Hamm's attendance problems to Simoens (who kept a close eye on the records of all probationary employees). After consulting with Harl and John Marks, Harl's supervisor, Simoens decided to terminate Hamm for unsatisfactory attendance during the probationary period.

On February 1, 1991, Hamm filed suit against the Postal Service alleging employment discrimination. The district court dismissed the complaint for failure to name or serve the proper party defendant within the thirty-day limitation period required in this case. This court reversed that decision in an unpublished order for failure to consider the effect of an amendment to Fed.R.Civ.P. 15(a) and remanded the case for further consideration. After remand, Hamm filed an amended complaint and the Postal Service responded with a motion for summary judgment. The district court granted the Postal Service's motion on April 7, 1994 finding that Hamm had not presented sufficient evidence demonstrating that he was disabled within the meaning of the Act.

## II. Analysis

On appeal, Hamm alleges that the district court erred in granting summary judgment in favor of the Postal Service. Specifically, he contends that he presented evidence from which a reasonable juror could conclude that Simoens (who had the final say over employment decisions) regarded him as disabled within the meaning of the Rehabilitation Act. We review the district court's grant of summary judgment *de novo. Bourne Co. v. Hunter Country Club, Inc.,* 990 F.2d 934, 938 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 308, 126 L.Ed.2d 256

(1993). Summary judgment is proper only if the moving party demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Id.;* Fed.R.Civ.P. 56(c). In reviewing the record, we draw all inferences in a light most favorable to the non-movant. *Frey v. Fraser Yachts,* 29 F.3d 1153, 1156 (7th Cir.1994).

Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, contains various provisions for encouraging the federal government (including the Postal Service) to employ the disabled. *McGuinness v. United States Postal Service,* 744 F.2d 1318, 1319 (7th Cir. 1984). Congress, however, failed to create a private right of action in the Act as originally enacted. *Id.* Therefore, in 1978 Congress added section 505, 29 U.S.C. § 794a. *Id.* This section provides "that the 'remedies, procedures, and rights' in Title VII of the Civil Rights Act of 1964 'shall be available' to any federal employee or job applicant complaining of discrimination against the [disabled]." *Id.* at 1319–20; 29 U.S.C. § 794a(a)(1). Hamm alleges that he is entitled to relief under this section.

 To succeed in his claim, however, Hamm must first "satisfy the threshold requirement that he is a [disabled] person as defined by the statute." *Jasany v. United States Postal Service,* 755 F.2d 1244, 1248 (6th Cir.1985); *Forrisi v. Bowen,* 794 F.2d 931, 933 (4th Cir.1986). The Rehabilitation Act defines an individual with a disability,[2] as a "person who ... has a physical or mental impairment which substantially limits one or more of such person's major life activities ... [or] is regarded as having such impairment." 29 U.S.C. § 706(8)(B); 29 C.F.R. § 1613.702(a). "Major life activities" are defined as "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," 29 C.F.R. § 1613.702(c), and the phrase "regarded as having such an im-

pairment" in the Act is defined in pertinent part as a person who "has none of the [above described] impairments ... but is treated by an employer as having such an impairment." 29 C.F.R. § 1613.702(e). The burden is on the plaintiff to establish that he is disabled as defined above. *Jasany,* 755 F.2d at 1249.

Hamm does not contend that he had arthritis or that this impairment substantially limited one of his major life activities. Indeed, he insists that he never considered himself to be disabled at any time relevant to this litigation and also insists that he never failed to perform any aspect of his job including whatever walking and climbing responsibilities had been assigned to him. Instead, Hamm argues that 29 U.S.C. § 706(8)(B) extends to his situation because, though not in fact handicapped, he was perceived as being so. He alleges that the Postal Service, through Simoens, *regarded* him as having an impairment that substantially limited one of his major life activities, his walking. We must therefore determine whether Simoens knew about Hamm's arthritis and, if so, whether he thought that it had substantially affected Hamm's ability to walk.[3] *See Byrne v. Board of Educ., School of West Allis–Milwaukee,* 979 F.2d 560, 565 (7th Cir.1992) (whether a person is handicapped under the Act is an individualized inquiry best suited to a case-by-case determination).

This inquiry is admittedly rare since this question does not arise in most cases of alleged employment discrimination. "In race or sex discrimination, the protected characteristic of the employee is immediately obvious to the employer, but that is not always the case with disability discrimination." *Hedberg v. Indiana Bell Telephone Company, Inc.,* 47 F.3d 928, 932 (7th Cir.1995). But it is nevertheless a key part of any such plaintiff's case. As this court has said, "an employer cannot be liable ... for firing an employee when it indisputably had no knowl-

---

**2.** The Act has been amended and now uses the term "disability" instead of "handicaps." 29 U.S.C. § 706(8)(B); *Chandler v. City of Dallas,* 2 F.3d 1385, 1389 n. 7 (5th Cir.1993).

**3.** While there are several cases interpreting what it means to have a substantial limitation on a person's "major life activity" of "working," *see, e.g., Chandler,* 2 F.3d at 1391–93; *Byrne v. Board*

*of Educ., School of West Allis–Milwaukee,* 979 F.2d 560, 565 (7th Cir.1992); *Welsh v. City of Tulsa, Okl.,* 977 F.2d 1415, 1419 (10th Cir.1992); *Forrisi,* 794 F.2d at 934–35; *Jasany,* 755 F.2d at 1249 n. 3, we note that there is a lack of such cases defining a substantial limitation on a person's ability to walk.

edge of the disability." *Hedberg,* at 932 (interpreting the Americans with Disabilities Act which makes an employer liable for firing an employee "because of" a disability).[4] Although Hamm claims not to have a disability, he must nevertheless prove that the Postal Service terminated him because it regarded him as having such an impairment.

■ Hamm appears to have neglected this part of his case. A review of the record reveals very little evidence on whether Simoens regarded Hamm as disabled under the Act. And what little there is will not support such an inference. Hamm, for example, directs us to testimony in the record where Harl and Simoens testify that Harl expressed concerns, at a meeting prior to Hamm's termination, about Hamm's ability to climb ladders safely. But after reviewing this exchange, there is nothing indicating that Simoens was told that Hamm's apparent problems affected his walking or otherwise substantially limited his ability to walk. Hamm also points to a portion of the record where Simoens admitted to observing Hamm at work. But again, there is no indication that Simoens saw that Hamm was having trouble getting around or, if he had, drew any conclusions about whether Hamm had a disability. In addition, Hamm argues in passing that he was late for work (the second time) because of pain resulting from his arthritis. But assuming that tardiness could be considered a symptom of his alleged disability, it was not "so obviously [a] manifestation[ ]" of arthritis that it would be reasonable to infer that Simoens knew of it and then concluded that it was disabling. *Hedberg,* at 934. As this court has said, "[t]ardiness and laziness have many causes, few of them based in illness." *Id.* And finally, although Hamm did indicate on one Postal Service medical form that he had arthritis prior to employment, the page containing this information was considered "restricted medical information" and was therefore not shown to Simoens.

In the end, Hamm has demonstrated no evidence from which it would be reasonable to conclude that Simoens knew of Hamm's arthritis or that, if he had, he perceived the

affliction as disabling. He invites us to draw inferences that are merely speculative. And as we have stated on numerous occasions, "speculation does not meet a party's burden of producing some defense to a summary judgment motion." *Id.* at 931–32.

Our conclusion is further supported by the regulations interpreting the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). Although not binding on our interpretation of the Rehabilitation Act, the ADA borrows extensively from the Rehabilitation Act and uses many of the same terms. *See* 29 C.F.R. § 1630.2(g)–(j); *Hedberg,* at 932–33 (the language of the Rehabilitation Act is substantially the same as the language of the ADA). The regulations interpreting the ADA provide guidance on how to interpret these terms, including several factors that should be considered when determining whether an impairment is substantially limiting. These factors are "(1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long term impact, or the expected permanent or long term impact of, or resulting from, the impairment." 29 C.F.R. pt. 1630 app., § 1630.2(j).

■ After reviewing the record in light of these factors, Hamm's condition, even if Simoens had known of it, could not have been perceived as substantial. For instance, had Simoens been privy to conversations between Hamm and Harl (and there is no indication that he was), he would have heard both men say that they thought that Hamm's condition was temporary. Hamm, for example, told Harl (when Harl inquired about Hamm's difficulties) that his problems were "nothing" and "it just would pass." In addition, Harl stated that:

> I was concerned with the way he was walking, yeah, because he couldn't really perform all of the duties on the route sheet safely. But since it was short-term, we would try to work around such items that he could not perform safely.

Under the ADA, "[i]ntermittent, episodic impairments are not disabilities." *Vande Zande v. Wisconsin Dept. of Admin.,* 44 F.3d 538, 544 (7th Cir.1995). Moreover, there is

---

4. While not interpreting § 706(8)(B) of the Rehabilitation Act, the court's discussion in *Hedberg* is

directly relevant to the limitations of an employer's perceptions here.

no evidence in the record, let alone information presented to Simoens, suggesting that Hamm's condition was especially severe or that its impact on his walking would be long term. In fact, Hamm continued to do all of the functions of his job and gave every indication that he would continue doing so indefinitely. "Many impairments do not impact an individual's life to the degree that they constitute disabling impairments." 29 C.F.R. pt. 1630 app., § 1630.2(j). On this evidence, Hamm has not demonstrated that Simoens regarded him as having one of these.

### III. Conclusion

Hamm bore the burden in this case of establishing that although he did not in fact have a disability, his employer, the Postal Service, regarded him as having such a disability within the meaning of the Rehabilitation Act. Had he established this, he would then have been required to show that the Postal Service fired him because of this misperception. But because he did not present enough evidence to demonstrate the former, the district court granted summary judgment for the defense before he could attempt to demonstrate the latter. After reviewing the evidence, we conclude that this was not error. The judgment of the district court is

AFFIRMED.