Anneliese **DOTSON**, Plaintiff,

v.

**ELECTRO–WIRE PRODUCTS, INC.,
and Chester Sliski, general
manager, Defendants.**

No. 94–4056–SAC.

United States District Court,
D. Kansas.

June 15, 1995.

A. Michelle Roberts, Woner, Glenn, Reeder, Lowry & Girard, Topeka, KS, for Anneliese Dotson.

Arthur E. Palmer, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, Francis J. Newton, Jr., Berry, Moorman, King & Hudson, Detroit, MI, for Chester Sliskie and Electro-Wire Product Co.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendants' motion for summary judgment. (Dk. 27). Anneliese Dotson had been an employee at Electro–Wire Products, Inc. for six years, when she refused to perform a short-term job assignment given by her supervisor. The plant manager, Chester Sliski, then spoke with Dotson and asked her to do the assigned work. After Dotson continued to refuse the assignment, Sliski fired her.

The plaintiff Dotson claims she was fired in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12117, and in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. Electro–Wire Products, Inc. and Sliski defend that Dotson was terminated for insubordination and not because of her age or any alleged disability.

## SUMMARY JUDGMENT STANDARDS

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.,* 849 F.2d 1269, 1273 (10th Cir.1988).

 The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case." *Martin v. Nannie and Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). " 'The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991)). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the non-moving party. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.,* 45 F.3d 357, 363 (10th Cir.1995).

 More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 346 (10th Cir. 1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

## STATEMENT OF UNCONTROVERTED FACTS

For purposes only of this motion for summary judgment, the court considers the following statement of facts to be uncontroverted.

1. Anneliese Dotson was born in Stuttgart, Germany, on March 21, 1937, and moved to the United States in the 1950's. In May of 1986, Dotson was hired at a plant in Junction City, Kansas to plug wires. The plant was acquired by Electro–Wire Products, Inc. ("Electro–Wire") later in 1986. She continued to work for Electro–Wire at the Junction City plant until her termination on September 9, 1992. Dotson was forty-nine years old when hired and fifty-five years old when terminated.

2. Throughout her employment at Electro–Wire, Dotson's principal job duty was plugging wires. She occasionally performed other duties including coiling wires, sleeving, and cutting off molds.

3. Over her term of employment, Dotson cut off molds approximately fifty times with the last time in 1990. Dotson's supervisors did not consider removing molds to be a specific part of her regular job.

4. Electro–Wire's employees remove molds by either melting them with heat guns or cutting them. Cutting off molds requires hand strength and, in Dotson's opinion, is hard work.

5. On September 9, 1992, approximately forty-five minutes after her shift started, Dotson was instructed by the router that a supervisor, Robert Stark, wanted her to cut off molds. Dotson told the router that she could not cut off molds as she needed to plug wires.

6. Robert Stark then came to Dotson's work station and directly instructed her to cut off molds. Dotson testified that the following exchange occurred: "I said I can't. I

said who will do my job? He said I will send somebody in to do your job, but I should cut off the mold. And I said I can't because I have a disability in my hands." (Dotson Depo. at 27). Stark left and returned with the plant manager, Chester Sliski, and the production superintendent, John Evans. Sliski again asked her to cut off molds as Stark had instructed. Dotson testified that she repeated her response for Sliski that she could not cut off molds because of her plugging duties and because of a disability in her hands. Sliski testified that he explained to Dotson that this was a short-term job and not a transfer. When she still refused to do the assigned work, Sliski fired Dotson.

7. Dotson bases her ADA claim on a disability with her hands. In her deposition, she describes her impairment as pain and swelling in the hands and considers the condition to have developed into a disability in January of 1992. In her opinion, this disability prevents her from doing hard work with her hands. In particular, she is able to grip tools but not to squeeze them with much pressure. Dotson says she can do repetitive work like plugging and checking wires.

8. Prior to her termination, Dotson visited a physician only once regarding this condition with her hands. In March of 1992, Dr. Anthony Francis at the Irwin Army Hospital at Fort Riley, Kansas, saw Dotson, prescribed a medication, and told her to return in a year unless her condition required an earlier return. Dr. Francis also wrote for her the following work restriction on a prescription form: "She cannot do hard physical labor rising (sic) her hands—maybe DJD or fibromyositis." After taking the medication for six months, Dotson's condition improved to the point that she experienced no pain. For the six months before and after her visit to Dr. Francis, Dotson only performed her plugging job. Prior to her deposition in July of 1994, Dotson had not returned for the follow-up exam and had not seen any other physician regarding her hands.

9. The day following her doctor visit in March of 1992, Dotson took Dr. Francis' handwritten work restriction into the personnel director, Nancy Horn. Dotson told Horn that she had a disability which prevented hard physical labor and asked that the restriction be placed in her personnel file. When Horn asked why Dotson was even at work if disabled, Dotson explained that her doctor said she could perform her present job but not any hard jobs. Other than placing this work restriction into her personnel file, Dotson did not request any special arrangements from Electro–Wire for her disability.

10. Prior to terminating Dotson, Sliski had never seen the handwritten work restriction from Dr. Francis.

11. In the last half of 1994, Dotson saw a Dr. Walter Farrell at Fort Riley, Kansas. In a memorandum dated December 19, 1994, Dr. Farrell reports:

4. She was tested at our facility in the occupational therapy clinic and was found to have decreased grip and pinch strength in both hands. Copies of all reports are available upon request. Although her previous testing in August showed normal strength in the left hand and only mild weakness in the right, the more difficult question is whether she is able to perform the job tasks she was being asked to do by her former employer, i.e., repetitive trimming of the entire plastic portion of electrical plugs using manual shears.

5. It is my professional opinion, based on my history, physical examination, radiological and laboratory testing, and review of the pertinent medical records, that Mrs. Dotson is presently unable to perform in her former position. It is also very likely that this was so in March 1992. I recommend that if the patient undergoes further testing of her grip strength, it be done in a setting better designed to simulate the type of repetitive squeezing motion she encountered in her job cutting off molds.

12. Marissa Figures, a co-employee, told Dotson that another co-employee, Lisa Vernon, had heard that Sliski had said he was going "to get rid of some of the older employees." (Dotson Depo. at 17)

**ADA**

■ The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual

in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a prima facie case of disability discrimination on an employment termination claim, the plaintiff must demonstrate: "(1) that [s]he is a disabled person within the meaning of the ADA; (2) that [s]he is qualified, that is, with or without reasonable accommodation (which [s]he must describe), [s]he is able to perform the essential functions of the job; and (3) that the employer terminated [her] ... because of [her] ... disability." *White v. York Intern. Corp.*, 45 F.3d at 360–61 (citations omitted). The defendants argue the plaintiff is unable to prove that she is "disabled" for purposes of the ADA.

"The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). To decide whether someone is disabled as defined above, one must know the meaning of three other important terms, "physical or mental impairment," "substantially limits," and "major life activities." Because the ADA does not define any of these terms, we are guided by the definitions adopted by the Equal Employment Opportunity Commission ("EEOC") in regulations issued pursuant to 42 U.S.C. § 12116. *See Bolton v. Scrivner,* 36 F.3d 939, 942 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995).

The first step is deciding if an "impairment" exists. The ADA regulations adopt the definition of "physical or mental impairment" found in the Rehabilitation Act regulations, 34 C.F.R. § 104. *See* 29 C.F.R. Pt. 1630, Appendix to Part 1630—Interpretative Guidance on Title I of the Americans with Disabilities Act, § 1630.2(h) Physical or Mental Impairment; *Hamm v. Runyon,* 51 F.3d 721, 725 (7th Cir.1995) ("[T]he ADA borrows extensively from the Rehabilitation Act and uses many of the same terms."). The term means "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory ..., cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or ... [a]ny mental or psychological disorder, ... and specific learning disabilities." 29 C.F.R. § 1630.2(h).

"Many impairments do not impact an individual's life to the degree that they constitute disabling impairments." 29 C.F.R. Pt. 1630, App., § 1630.2(j); *Hamm,* 51 F.3d at 726. An impairment or a combination of impairments are considered disabling if they substantially limit one or more of a person's major life activities. *Id.* The ADA regulations define "substantially limit" as follows:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The regulations also list three factors to consider in determining whether the impairment substantially limits the person in a major life activity and three more factors to consider when the major life activity is working. 29 C.F.R. § 1630.2(j)(2) and (3). In short, the disability determination does not depend as much on the name or diagnosis of the impairment as it does on the effect the impairment has on a particular individual. 29 C.F.R. Pt. 1630 App. § 1630.2(j); *see Chandler v. City of Dallas,* 2 F.3d 1385, 1396 (5th Cir.1993) ("[T]he effect of a given type of impairment, both on major life activities in general and on a person's ability to perform specific tasks, can vary widely from individual to individual."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994).

The EEOC has adopted the definition of "major life activities" found in the Rehabilitation Act. *Bolton,* 36 F.3d at 942. This term "means functions such as caring for oneself, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Working" in this definition "does not necessarily mean working at the job of one's choice." *Welsh v. City of Tulsa, Okl.,* 977 F.2d 1415, 1417 (10th Cir.1992).

Dotson opposes summary judgment arguing that her hands were impaired to the point that they substantially limited her ability to cut molds and do other hard physical work. With respect to the major life activity of working, the ADA regulations provide that:

> The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i); *see also Bolton,* 36 F.3d at 942. To defeat the summary judgment motion, the plaintiff must present evidence from which a reasonable jury could find that her impairment restricts her ability to perform either a class of jobs or a broad range of jobs in various classes.

The ADA regulations specify three factors relevant in considering whether an impairment substantially limits a major life activity: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2); *see Bolton,* 36 F.3d at 943. When the issue is whether the impairment substantially limits the individual's life activity of work, three additional factors become relevant:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. 1630.2(j)(3)(ii); *see also Bolton,* 36 F.3d at 943; *Welsh v. City of Tulsa, Okl.,* 977 F.2d at 1419 (noting the relevant factors to include "(1) the number and type of jobs from the impaired individual is disqualified, (2) the geographical area to which the individual has reasonable access, and (3) the individual's job expectations and training." (quoting *Jasany v. United States Postal Service,* 755 F.2d 1244, 1249 (6th Cir.1985)).

In *Bolton,* the plaintiff presented evidence that he was unable to return to his former position of order selector at a grocery warehouse because of pain, numbness, and an inability to lift weights and to stand for prolonged periods. In the state worker's compensation proceeding, Bolton was found to have a nine percent permanent partial disability to his right foot and a twenty-nine percent permanent partial disability to his left foot. The Tenth Circuit rejected Bolton's argument that the district court had overlooked evidence demonstrating his inability to perform a class of jobs:

> This evidence, however, does little to show that Bolton is restricted from performing a class of jobs. The evidence does not address Bolton's vocational training, the geographical area to which he has access, or the number and type of jobs demanding similar training from which Bolton would also be disqualified. Instead, the evidence goes to the nature and severity, duration, and impact of Bolton's impairment—the factors listed in 29 C.F.R. § 1630.2(j)(2). Because Bolton failed to produce evidence showing a significant restriction in his "ability to perform either a class of jobs or a broad range of jobs in various classes," *id.* § 1630.2(j)(3)(i), we affirm the award of summary judgment to Scrivner on Bolton's ADA claim.

36 F.3d at 944 (footnotes omitted). By way of footnote, the Tenth Circuit observed that other evidence contradicted the extensive and permanent nature of Bolton's impairments. 36 F.3d at 944 n. 3.

In a recent unpublished opinion, the Tenth Circuit again affirmed a grant of summary judgment for the employer on a finding that the plaintiff had not proved a disability under the ADA. *Stone v. CGS Distribution, Inc.,* No. 94–1423, 1995 WL 238333, 1995 U.S.App. LEXIS 9374 (10th Cir. Apr. 21, 1995).[1] The plaintiff worked as a truck driver for the defendant until a work-related injury to his shoulder and hand required him to take medical leave. When the plaintiff was released for work, the following medical restrictions were imposed: "not lift more than forty pounds occasionally or more than thirty pounds frequently, and that he not do 'combined twisting and lifting activities for periods greater than 2 hours at a time or greater than 4 hours per 8–hour day.' " 1995 WL 238333 at *1, 1995 U.S.App. LEXIS 9374 at *2. The plaintiff brought an ADA suit after the defendant refused to rehire him. In affirming the district court's summary judgment order, the Tenth Circuit commented on the lack of vocational evidence to support the plaintiff's ADA claim:

> In response to defendant's summary judgment motion, plaintiff did not produce any evidence relating to the impact of his physical impairments on his ability to perform either a class of jobs or a broad range of jobs within various classes. Instead, plaintiff relied exclusively on an example set forth by the Equal Employment Opportunity Commission in its Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. pt. 1630, app., § 1630.2(j), which provides that "an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs."

This interpretive example cannot substitute for relevant vocational evidence, however, especially here, where the evidence did not even establish the condition presumed by the example—that plaintiff is precluded from performing "any heavy labor job." Because plaintiff failed to produce any evidence that his impairments substantially limited his ability to perform either a class of jobs or a broad range of jobs within various classes, a dispositive matter on which he would bear the burden of proof at trial, the district court properly entered summary judgment against plaintiff on his ADA claim. (citation omitted).

1995 WL 238333 at *2–3, 1995 U.S.App. LEXIS 9374 at *7–*8. The Tenth Circuit plainly requires an ADA plaintiff to prove more than the inability to do his or her former job. *See Otis v. Canadian Valley–Reeves Meat Co.,* No. 94–6308, 1995 WL 216906, 1995 U.S.App. LEXIS 8247 (10th Cir. Apr. 12, 1995) (After returning with restrictions from medical leave, the plaintiff alleged the defendant assigned him work that was too strenuous, refused his request for assignment to less demanding work, and forced his resignation. Proof that the plaintiff could not do his former job of meat loader because of the lifting restriction is not enough to establish that the plaintiff is restricted in any major life activity.).

■ As for Dotson's proof of an impairment that substantially limits the activity of working, her case is deficient in the same way as the plaintiffs in *Bolton, Stone,* and *Otis.* She presents no evidence that her impairment prevents her from doing an entire class of jobs or a broad range of jobs in various classes. There is no evidence of vocational training, the geographical area accessible to her, or the number and type of jobs with similar training or skill requirements from which the plaintiff is also disqualified by reason of the impairment. The plaintiff offers nothing to demonstrate her level of skills, training or abilities for purposes of determining comparable work. The plaintiff does not attempt to prove the other

---

1. The court cites this unpublished opinion because it believes the opinion has "persuasive value with respect to a material issue" in this case and will "assist the court in its disposition." 151 F.R.D. 470.

available work that her impairment also disqualifies her from doing. As for the other three factors going to the nature, duration and impact of the impairment, the plaintiff's evidence cannot sustain any tenable analysis of these factors.[2]

At most, the evidence of record shows that Dotson's impairment prevented her from doing only one aspect of her job—the removal of molds by cutting. "[T]he inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working." *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir.1995); *Chandler v. City of Dallas*, 2 F.3d at 1392–93. As shown by the fact that the plaintiff had not cut molds for over a year before her termination, this was an irregular and short-term aspect of her job. The plaintiff never argues that her impairment prevented her from doing her regular work of plugging wires. Even if she had offered such evidence, this is not enough to prove a disability. *See Gupton v. Com. of Va.*, 14 F.3d 203, 205 n. 3 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 59, 130 L.Ed.2d 17 (1994); *Welsh v. City of Tulsa, Okl.,* 977 F.2d at 1419. Without any proof that Dotson's impairment significantly restricted her overall employment opportunities, the court must find that the plaintiff has not met her burden of showing an impairment that substantially limits major life activities.

■ The court turns to whether the plaintiff has produced evidence from which a jury could find a record of impairment. The ADA regulations define "a record of such impairment" as "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k); *see Dutcher v. Ingalls Shipbuilding*, 53 F.3d at 727–28; *Ricks v. Xerox Corp.*, 877 F.Supp. 1468, 1476 (D.Kan.1995). This provision is intended to address discrimination that oc-

curs because of an individual's history of a disability or because of an individual's misclassification as disabled. 29 C.F.R. Pt. 1630 App. § 1630.2(k).

Because the impairment of record must be one that substantially limits a major life activity, records of disability findings and classifications made in other proceedings do not necessarily amount to a record of impairment. The regulations make this very point:

> The fact that an individual has a record of being a disabled veteran, or of disability retirement, or is classified as disabled for other purposes does not guarantee that the individual will satisfy the definition of "disability" under part 1630. Other statutes, regulations and programs may have a definition of "disability" that is not the same as the definition set forth in the ADA and contained in part 1630. Accordingly, in order for an individual who has been classified in a record as "disabled" for some other purpose to be considered disabled for purposes of part 1630, the impairment indicated in the record must be a physical or mental impairment that substantially limits one or more of the individual's major life activities.

*Id.* Kinds of records where disability information might be found include, but are not limited to, "education, medical, or employment." *Id.*

The only record of impairment here is the handwritten medical note that Dotson had asked to be placed in her employment file. This single note fails to sustain a reasonable inference that the plaintiff's impairment in her hands substantially limited one or more of her major life activities. The note does not indicate whether Dotson's condition is permanent or temporary nor does it describe the severity of her condition. The note restricts Dotson from "hard physical labor rising her hands." As stated above, there is no evidence that this restriction disqualifies Dot-

2. The single handwritten note from her doctor in March of 1992 with its ambiguous work restriction, "She cannot do hard physical labor rising her hands," is not enough to prove an impairment that substantially limits a major life activity. This note does not afford a substantial and competent basis for considering the nature and

severity of the impairment, the duration or expected duration of the impairment, or the permanent or expected impact of the impairment. Dr. Farrell's report, though more detailed, similarly fails to offer a sound basis for critically analyzing these factors.

son from a class of jobs or from a broad range of jobs in various classes. The plaintiff is unable to prove a record of impairment.

■ Finally, the court considers whether the defendants regarded Dotson as having a disabling impairment. This last alternative definition of disability serves an important purpose of the ADA:

> The latter definition, although at first glance peculiar, actually makes a better fit with the elaborate preamble to the Act, in which people who have physical or mental impairments are compared to victims of racial and other invidious discrimination. Many such impairments are not in fact disabling but are believed to be so, and the people having them may be denied employment or otherwise shunned as a consequence. Such people, objectively capable of performing as well as the unimpaired, are analogous to capable workers discriminated against because of their skin color or some other vocationally irrelevant characteristic.

*Vande Zande v. State of Wis. Dept. of Admin.*, 44 F.3d 538, 541 (7th Cir.1995).

The ADA regulations define "regarded as having such an impairment" in three different ways:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

> (3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(1). The first and last way requires proof that the employer perceives or believes the employee to have an impairment that is substantially limiting. The second way turns on proof that the employer's attitude toward the employee's impairment results in an impairment that is substantially limiting.

Dotson argues the defendants regarded her as disabled after she presented them with the handwritten note from her physician in March of 1992. This evidence and argument falls far short of creating a genuine issue of material fact. The note does not describe an impairment that substantially limits the plaintiff's work. There is no evidence from which the court could reasonably infer that the defendants perceived Dotson as disabled. Upon receipt of the physician's note, the defendants did not change Dotson's job duties or take any other actions which could indicate that they considered her incapable of doing the general type of employment involved. "An employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general." *Chandler*, 2 F.3d at 1393. Even assuming that the defendants believed Dotson's statement that she had a impairment which prevented her from cutting molds, this alone will not sustain an inference that the defendants believed her impairment to substantially limit her general ability to work or to do other job duties. In fact, Dotson told them she could do her regular job duties. Dotson does not carry her burden of presenting a triable case that the defendants regarded her as disabled. The defendants are entitled to summary judgment on the plaintiff's ADA claim.

**ADEA**

■ The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). On disparate treatment claims, the plaintiff must prove the defendant acted with a discriminatory motive or intent. *Sorensen v. City of Aurora*, 984 F.2d 349, 351 (10th Cir.1993). Absent the unusual situation of direct evidence of the employer's discriminatory intent, the court assesses a plaintiff's claim using the burden of proof scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Department of Community Affairs v.*

*Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1982). *Thomas v. International Business Machines,* 48 F.3d at 484. This scheme parallels the one applicable in Title VII cases. *Id.*

■ The scheme begins with determining whether the plaintiff can prove a prima facie case of discrimination. *St. Mary's Honor Center v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407, 415 (1993). If proved, a prima facie case gives rise to a presumption of discrimination and shifts the burden of production to the defendant to rebut the presumption. *St. Mary's,* — U.S. at —, 113 S.Ct. at 2747, 125 L.Ed.2d at 416. In short, it becomes the defendant's burden to produce evidence that the challenged actions were taken for a legitimate, nondiscriminatory reason. *Id.* To carry this burden, the defendant " 'must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* (quoting *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094).

■ If the defendant carries the burden of production, then the presumption of discrimination drops from the case. *St. Mary's,* — U.S. at —, 113 S.Ct. at 2747, 125 L.Ed.2d at 416. The plaintiff retains the ultimate burden of persuading the factfinder of intentional discrimination. *Id.* To prevail, the plaintiff must directly prove the employer acted on a discriminatory motive or indirectly prove the employer's reasons were a pretext for discrimination, that is, the stated reasons were false and discrimination was the real reason. *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d at 1417; *see St. Mary's,* — U.S. at —, 113 S.Ct. at 2752, 125 L.Ed.2d at 422. "Although a prima facie case combined with disproof of the employer's explanation does not prove intentional discrimination as a matter of law, it may permit the factfinder to infer intentional discrimination, and thus preclude summary judgment for the employer." *Durham v. Xerox Corp.,* 18 F.3d 836, 840 (10th Cir.1994) (citations omitted), *cert. denied,* — U.S. —, 115 S.Ct. 80, 130 L.Ed.2d 33 (1994).

On the other hand, summary judgment is appropriate when the plaintiff fails to present evidence of pretext. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 529 (10th Cir.1994).

■ To establish a prima facie case of discriminatory discharge on the basis of age, the plaintiff must prove that: (1) she was within the protected age group; (2) her job performance was satisfactory; (3) she was discharged; and (4) she was replaced by a younger person. *Thomas,* 48 F.3d at 484. The defendants argue Dotson is unable to prove that her work was satisfactory and that she was replaced by someone younger. Dotson advances no direct evidence that the defendants intended to discriminate against her based on her age.

■ The plaintiff does not come forth with "facts as would be admissible in evidence" showing that she was replaced with someone younger. *See* Fed.R.Civ.P. 56(e). The plaintiff's allegations in the pretrial order that a younger woman replaced her are not enough. Conclusory allegations cannot defeat a motion for summary judgment. *White,* 45 F.3d at 363. Even assuming the plaintiff had presented a prima facie case, she offers no evidence showing that the defendants' reason for firing her—insubordination—is pretextual. Dotson's testimony concerning an ageist comment one co-employee told her another co-employee had heard had been made by the defendant Sliski is inadmissible hearsay that will not defeat summary judgment. *See Thomas,* 48 F.3d at 485. The record is devoid of any evidence that the defendants terminated Dotson because of her age.

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment (Dk. 27) is granted;

IT IS FURTHER ORDERED that the clerk is directed to enter judgment in favor of the defendants with each side to bear its own costs.