**Dawn MOWAT–CHESNEY, Plaintiff,**

v.

**The CHILDREN'S HOSPITAL, a Colorado non-profit corporation, Wilma Stark, individually and in her professional capacity, James Wiggins, M.D., individually and in his professional capacity, Defendants.**

No. 94–D–1552.

United States District Court, D. Colorado.

March 5, 1996.

John W. McKendree, Denver, CO, for Plaintiff.

Richard G. McManus, Jr., Denver, CO, for Defendants.

## MEMORANDUM OPINION & ORDER

DANIEL, District Judge.

### I. *INTRODUCTION*

This matter is before the Court on Defendants' Motion for Summary Judgment, filed May 1, 1995, by which they seek judgment as a matter of law on Plaintiff's first claim for relief for either of two reasons: (1) Plaintiff's alleged disability claim accrued before the effective date of the Americans with Disabilities Act (ADA) and thus is time barred; or (2) Plaintiff is not "disabled" as defined under the ADA. Defendants also argue that if summary judgment is granted, then the remainder of the action should be dismissed under 28 U.S.C. § 1367(c)(3) since Plaintiff's remaining claims for relief are all state based. I have reviewed the parties' briefs, other pertinent pleadings and the relevant case authorities.

### II. *STANDARDS FOR SUMMARY JUDGMENT*

Granting summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled

to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1534 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993); *Ash Creek Mining Co. v. Lujan*, 934 F.2d 240, 242 (10th Cir.1991); *Metz v. United States*, 933 F.2d 802, 804 (10th Cir.), *cert. denied*, 502 U.S. 957, 112 S.Ct. 416, 116 L.Ed.2d 436 (1991). A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Merrick v. Northern Natural Gas Co.*, 911 F.2d 426, 429 (10th Cir. 1990). Only disputes over facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Fostvedt v. U.S., I.R.S.*, 824 F.Supp. 978, 982 (D.Colo.1993), *aff'd*, 16 F.3d 416 (10th Cir. 1994).

In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Concrete Works v. City and County of Denver*, 823 F.Supp. 821, 828 (D.Colo. 1993), *rev'd on other grounds*, 36 F.3d 1513 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1315, 131 L.Ed.2d 196 (1995). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir.1991).

When moving for summary judgment, the moving party has the initial burden. The movant need not show an absence of issues of material fact in order to be awarded summary judgment, nor must it negate the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rather, it must only allege an absence of evidence to support the opposing party's case and identify supporting portions of the record. *Id.* Once the movant has carried its initial burden, the burden of going forward shifts to the opposing party. The non-movant must establish that there are issues of material fact to be determined. *Id.* at 322–23, 106 S.Ct. at 2552–53. The nonmovant must go beyond the pleadings and identify specific facts showing genuine issues for trial on every element challenged by the motion. *Tillett v. Lujan*, 931 F.2d 636, 639 (10th Cir.1991). Conclusory allegations do not establish issues of fact sufficient to defeat summary judgment. *McVay v. Western Plains Service Corp.*, 823 F.2d 1395, 1398 (10th Cir.1987).

### III. *FACTS*

Viewing the evidence in the light most favorable to Plaintiff, Dawn Mowat–Chesney, I take the following as true for purposes of evaluating Defendants' instant motion. Plaintiff, a registered nurse, is a former employee of The Children's Hospital (TCH). More specifically, after working in various nursing capacities in good standing at TCH for almost eleven (11) years, Chesney transferred to a nursing position in the hospital's Cardiac Catherization Laboratory (Cath Lab) on May 1, 1992. Chesney was employed in her new capacity for less than a month when she sustained cervical spine injuries in an automobile accident that exacerbated injuries she had received in two previous automobile accidents.

Though Chesney missed no work, the accident affected her work performance as evidenced by a June 29, 1992 incident which forms the basis of this action. On that date, Chesney was acting as the "scrub nurse" in a five and one-half hour procedure. As scrub nurse, Chesney was wearing a lead apron which is customary. As part of the procedure, Chesney was asked to "zero the transducer" at the four and one-half hour mark. This was her first opportunity to perform such a procedure as a Cath Lab nurse. However, when attempting to zero the transducer, Chesney's right hand motor function faltered, and she was unable to perform the procedure. Chesney's supervisor, Nurse Wilma Stark, noted her lack of response and came to the bedside to offer a reminder of the procedure. The delay of approximately ten seconds allowed Chesney sufficient time to recover and complete the procedure. Chesney claims, and the Court accepts as true, that the weight of the lead apron and the duration of the procedure aggravated her spinal injuries, thus accounting for her temporary failure. That same day, after the

procedure was completed, Stark told Plaintiff to "look for another job," though she did ask Chesney to remain in the Cath Lab for a few weeks to cover the scheduled vacations of other nurses.

The next day, June 30, 1992, Chesney visited her physician who informed her that wearing a lead apron for a prolonged period of time could aggravate her symptoms and therefore advised that she should avoid wearing the lead apron for periods longer than four and one-half hours. Thereafter, the head of the Cath Lab, James Wiggins, M.D., wrote three memos related to Chesney's termination. In the first, dated July 8, 1992, he wrote that the lead apron precludes Chesney from completing her duties. In the second, dated July 22, 1992, he wrote a general letter of recommendation and restated Chesney's inability to wear the lead apron. Finally, in a memo dated July 30, 1992, Dr. Wiggins stated his belief that he thought Chesney's difficulties stemmed from her car accidents. TCH posted a "Request to Recruit" for a replacement for Chesney on July 10, 1992. Chesney was eventually replaced with the very nurse who previously held her position, which Chesney claims was the underlying motivation behind TCH's purported discrimination. Additionally, Nurse Stark wrote a memo, dated July 28, 1992, wherein she criticized Chesney's work performance. Chesney's last day of work in the Cath Lab was July 24, 1992, whereupon she took a medical leave of absence.

Both before and after this date, a number of meetings were held to discuss Chesney's status. There is some dispute, however, as to the purpose of these meetings. Chesney claims that the purpose of these meetings was to discuss her possible return to the Cath Lab, whereas Defendants claim that the purpose was to find another nursing position for Chesney within the hospital. In any event, Chesney neither returned to the Cath Lab nor was she relocated to another nurs-

ing position within the hospital since none of the available nursing positions met Chesney's requirement of a day position. Accordingly, on September 24, 1992, TCH officially terminated Chesney.

As a result of the above referenced actions, Chesney asserts eight claims for relief of which only the first—violation of the ADA— is based on federal law. The other seven claims are grounded in Colorado state law over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).[1] Concerning her ADA claim, Plaintiff essentially contends that her spinal injuries constitute a disability insofar as she was unable to wear a lead apron for protracted periods and that TCH failed to reasonably accommodate her disability. See 42 U.S.C. § 12112(a).

## IV. DISCUSSION

### A. Chesney is not "Disabled" as Defined under the ADA

In order to state a prima facie case of disability discrimination under the ADA, a plaintiff must establish three things: (1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, that is, with or without reasonable accommodation, she is able to perform the essential functions of the job; and (3) that the employer terminated her because of her disability. White v. York Int'l Corp., 45 F.3d 357, 360–61 (10th Cir.1995). Here, my focus is limited to the first element—the definition of "disability"— which Defendants assert cannot be satisfied as a matter of law. Defendants contend that Plaintiff has not produced sufficient evidence to show that she is a disabled person within the meaning of the ADA and thus has failed to satisfy an essential element of her ADA claim. I agree.

The ADA defines the term "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a

---

1. Specifically, Plaintiff's claims for relief are: (1) violation of the ADA; (2) violation of the Colorado Anti–Discrimination Act, Colo.Rev.Stat. § 24–34–401, et seq.; (3) wrongful termination; (4) breach of employment contract; (5) tortious interference with contractual relationship; (6) negligent supervision; (7) conspiracy; and (8) puni-

tive damages. See Complaint at ¶¶ 44–85. The first four claims are against TCH only, claim five is against Stark and Wiggins, claim six is asserted against TCH and Wiggins, and claims seven and eight are asserted against all Defendants. Id.

record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Concerning the first definition, which is relevant here, the ADA's supporting regulations provide that "Major Life Activities" "means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Chesney claims that she is substantially limited in the major life activity of working. However, as the Tenth Circuit has stated:

> To demonstrate that an impairment "substantially limits" the major life activity of working, an individual must show "significant[ ] restrict[ion] in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training skills and abilities." The regulations specify that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."

*Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir.1994) (quoting 29 C.F.R. § 1630.2(j)(3)(i)) (internal citations omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995).[2]

Here, the record is clear that Chesney is not substantially limited in the major life activity of working. Taking the evidence in the light most favorable to Chesney, as required, the evidence indicates that following the June 29, 1992 incident when Chesney was told by Nurse Stark to start looking for another job, she went to see her physician. Her physician instructed her that she should limit wearing the lead apron to a maximum of four and one-half hours. Chesney then discussed this with both Dr. Wiggins and Nurse Stark a day or two later. However, by all indications, including Plaintiff's own deposition testimony, the Cath Lab is the only place in the hospital where a nurse is required to wear a lead apron for an extended period of time.[3] Thus, Chesney could perform other nursing positions at TCH and elsewhere. The record further indicates that Chesney met with hospital officials on several occasions to discuss other nursing positions. In fact, Chesney was even offered another nursing position, but apparently turned it down because of the hours.

■ Based on the evidence, there is but one conclusion: Chesney was not "disabled," as defined by the ADA and its supporting regulations, insofar as the "major life activity" of working is concerned. As the Tenth Circuit has made clear, not being able to work the job of one's choice does not constitute a disability. *Welsh v. City of Tulsa,* 977 F.2d 1415, 1417 (10th Cir.1992); *see also*

---

**2.** Similarly, the *Bolton* court noted that three factors "should be considered" when determining whether an impairment substantially limits a major life activity, 29 C.F.R. § 1630.2(j)(2), and that three additional factors "may be considered" when determining whether an impairment substantially limits the major life activity of working, *id.* § 1630.2(j)(3)(ii). *Bolton,* 36 F.3d at 943.

The three factors that "should be considered" when determining whether an impairment substantially limits a major life activity are: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

The three additional factors that "may be considered" when an individual claims substantial limitation in the major life activity of working are:

(A) [t]he geographical area to which the individual has reasonable access;

(B) [t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) [t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Id.* § 1630.2(j)(3)(ii); *see also Welsh v. City of Tulsa,* 977 F.2d 1415, 1419 (10th Cir.1992).

**3.** In her deposition, Chesney stated that "[t]he Cath Lab, to my knowledge, is the only place [in the hospital] where you are required to wear a lead apron for four and a half hours or greater. Therefore, the other [nursing] positions in the hospital did not require that accommodation." Chesney Deposition, December 5, 1994, at 52.

*Bolton,* 36 F.3d at 943 ("The district court correctly ruled that Bolton's inability to return to his particular job without some accommodation does not demonstrate a substantial limitation in the major life activity of working."); *Dotson v. Electro–Wire Prods., Inc.,* 890 F.Supp. 982, 989 (D.Kansas 1995) ("The Tenth Circuit plainly requires an ADA plaintiff to prove more than the inability to do his or her former job.").

Under the record of this case, at most, Chesney's spinal injury limited her from working one job: namely, as a Cath Lab nurse. She could work in any other nursing position and was in fact offered another nursing position by TCH. In her brief, Chesney seeks to deny this simple reality by engaging in semantical gymnastics. She argues that

> [i]n the Cath Lab there are a class of jobs for registered nurses, not just the position held by Plaintiff on June 29th when the incident involving the transducer occurred. [Nurse] Stark testified that there are three such positions, the scrub nurse, the monitoring nurse and the circulating nurse.... Of course, the incident of June 29th concerning Plaintiff's motor function problem occurred while she was at the scrub nurse position. Moreover, the monitoring nurse position did not require a lead apron since the nurse sits behind the lead window and the circulating position requires wearing a lead apron but not all of the time.
>
> The discrimination visited upon Plaintiff therefore, related to a class of jobs within the Cath Lab and, as such, subjected Plaintiff as a person with a disability to the discrimination at issue.... There were two other positions in the class of nursing positions which did not require the wearing of the lead apron for four and one-half hours that could easily have been assigned to Plaintiff during the brief period she required a reasonable accommodation.

Notwithstanding its creativity, Chesney's argument is unpersuasive. Simply stated, Chesney was unable to perform one job: the job of a Cath Lab nurse. She cannot circumvent this reality by attempting to break the

job of Cath Lab nurse into its component parts. Sure, it may be true that at times a Cath Lab nurse wore three hats, only one of which required the wearing of a lead apron on an extended basis. However, to say that this constitutes a "class of jobs" defies both law and logic. Just as every job consists of multiple tasks, a Cath Lab nurse has many duties, one of which includes wearing a lead apron for an extended period. Looking back, Chesney was hired as a Cath Lab nurse—not a "scrub nurse" or "circulating nurse" or "monitoring nurse"—and her injury precluded her from temporarily performing this one job, not a class of jobs.[4] *See Dotson,* 890 F.Supp. at 990 ("At most, the evidence of record shows that Dotson's impairment prevented her from doing only one aspect of her job—the removal of molds by cutting.").

■ In summary, the relevant consideration is whether an individual with a claimed disability is restricted from performing a class of jobs. *Bolton,* 36 F.3d at 944. Accordingly, because Chesney failed to produce evidence showing a significant restriction in her ability to perform either a class of jobs or a broad range of jobs in various classes, she is not "disabled" insofar as the "major life activity" of working is concerned. This conclusion is bolstered by Chesney's admission that her claimed disability was only temporary. *See* 29 C.F.R. § 1630.2(j)(2); *cf. Blanton v. Winston Printing Co.,* 868 F.Supp. 804, 808 (M.D.N.C.1994) ("Thus, the plain wording of the statute, the interpretive guidelines, and prior court decisions all indicate that a temporary injury with minimal residual effects, such as Plaintiff's, cannot be the basis for a viable claim under the Americans with Disabilities Act.").

■ As noted earlier, the ADA defines "disability" in three ways. 42 U.S.C. § 12102(2). In addition to arguing that she was "disabled" based on the "major life activity" of working, Chesney also argues, although less enthusiastically, that she is "disabled" under the ADA's third definition of disability: "being regarded as having such an

---

4. In her deposition, Chesney agreed that the "on-call" Cath Lab nurse was required to perform all three functions, thus reinforcing that a Cath Lab nurse consists of one "job," not three. Chesney Deposition, December 5, 1994, at 51.

impairment." *Id.* § 12102(2)(C). The supporting regulations define the phrase, "Is regarded as having such an impairment," as follows:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(*l*).

However, Chesney's alternative argument that she is "disabled" based on a perceived disability is without merit. Just as the court stated in *Ricks v. Xerox Corp.*, 877 F.Supp. 1468 (D.Kansas 1995):

> [Chesney] has not shown that [TCH] regarded [her] as having such an impairment. The only evidence presented indicates that [TCH] believed [Chesney] was capable of performing some work and that it attempted to find a position for which [s]he was capable and qualified.

*Id.* at 1476. In fact, here the evidence is even stronger. Chesney met with TCH's personnel officials in an effort to obtain another nursing position, but the several nursing positions discussed did not meet Chesney's self-imposed requirement of a day position. *See* Chesney Deposition, December 5, 1994, at 52. Thus, considering that TCH was willing to have Chesney work in a variety of other nursing positions, which she rejected, TCH did not regard Chesney as having a disability. *Cf. Welsh*, 977 F.2d at 1419 ("an impairment that an employer perceives as limiting an individual's ability to perform only one job is not a handicap under the Act").

For the foregoing reasons, Chesney is not "disabled" as defined by the ADA and its supporting regulations. 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2. That is, Chesney is neither substantially limited from performing the major life function of working nor does TCH perceive her as being impaired; thus, she is not disabled under the ADA.[5]

### B. *Dismissal of Remaining Claims*

As stated earlier, Chesney asserts eight claims for relief of which only the first—violation of the ADA by TCH—arises under federal law. The other seven are state based and premised on supplemental jurisdiction. 28 U.S.C. § 1367(a). Thus, having determined that Plaintiff's ADA claim fails as a matter of law, only state law claims remain. For this reason, pursuant to 28 U.S.C. § 1367(c)(3),[6] I choose to exercise my discretion and dismiss Plaintiff's remaining state law claims.

### V. *CONCLUSION*

It is hereby

ORDERED that Defendants' Motion for Summary Judgment is GRANTED. Accordingly, Plaintiff's first claim for relief—that TCH violated the ADA—is DISMISSED. It is further

ORDERED that the remainder of the action is DISMISSED pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, it is further

ORDERED that the trial presently set for March 18, 1996 is VACATED as moot.

---

**5.** The Court need not consider whether Chesney is disabled based on "a record of such an impairment," 42 U.S.C. § 12102(2)(B), since she presents no evidence in support thereof and the record is devoid of any such evidence. Similarly, having granted *Defendants' Motion for Summary Judgment* on the ground that Plaintiff is not "disabled," I need not consider Defendants' alternative argument that Plaintiff's ADA claim accrued before the effective date of the ADA.

**6.** 28 U.S.C. § 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> . . . .
>
> (3) the district court has dismissed all claims over which it has original jurisdiction.