William E. HITES, Plaintiff,

v.

PATRIOT HOMES, INC. d/b/a Lincoln Park Homes, Defendant.

No. 3:94 cv 682 AS.

United States District Court, N.D. Indiana, South Bend Division.

Nov. 7, 1995.

Patrick F. O'Leary, Goshen, IN, for plaintiff.

Michael J. Grattan, III, and Steven K. Like, Warrick Weaver and Boyn, Elkhart, IN, for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I. Procedural History

Plaintiff William E. Hites ("Hites") filed his complaint in this case on August 26, 1994, alleging that defendant Patriot Homes, Inc. d/b/a Lincoln Park Homes, ("Patriot") had discriminated against him due to his disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. Patriot filed a Motion for Summary Judgment on August 29, 1995, to which Hites responded on October 12, 1995, and Patriot replied to the response on October 26, 1995. As both parties have briefed the court on the issues and facts involved, this court is now ready to rule.

### II. Facts

Patriot is a manufacturer of mobile homes. In October 1992, Patriot hired Hites to work at its Lincoln Park Homes plant in Shipshewana, Indiana. Hites was originally assigned

to work on a special temporary project building mobile homes for the Federal Emergency Management Agency. When the special project was completed, Hites was transferred to a position in the Final Finish department as a general production employee, an unskilled position.

In May, 1993, Hites suffered an injury while working at Patriot; specifically, he tore his left anterior cruciate ligament and partially tore his left medial meniscus, both tears involving damage to Hites' left knee. Hites' knee was operated on in June of 1994, and he was not released to work until September 14, 1993. Hites collected worker's compensation through Patriot's insurance carrier which paid for all of his medical costs. When Hites returned to Patriot on September 14, 1993, he was informed by the plant manager, Flavian Arseneau, that there were no positions available at the time, but that he should check back. Hites alleges that Arseneau gave him a funny look when Hites informed him he would need to wear a knee brace when at work. Under Patriot's leave of absence policy, as stated in their employee handbook, Patriot employees may take leaves of up to ninety (90) days, but such leave does not "carry assurance of reinstatement into the same position which [the employee] had before taking the leave." Hites had been away from Patriot since May 24, 1993, more than 90 days, and thus was terminated from his employment for excessive absence. Hites continued to check back through December, 1993, but was not returned to work at Patriot.

On February 4, 1994, Hites filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging that Patriot had discriminated against him due to his disability in failing to reinstate him to his former position or to any of the positions which were filled between September and December of 1993. The EEOC issued a Right to Sue letter on June 22, 1994, and Hites filed this action on August 26, 1994.

### III. Analysis

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705,* 984 F.2d 762 (7th Cir.1993).

A thorough discussion of Rule 56 by the Supreme Court of the United States can be found in a trilogy of cases decided in 1986. *See, Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)[1]; and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56). A material question of fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings. *Hughes v. Joliet Correctional Center,* 931 F.2d 425, 428 (7th Cir.1991); *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920–21 (7th Cir. 1994). The nonmoving party may also not rely on conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992). "The days are gone, if

---

1. For the judicial epilogue of *Celotex,* see *Catrett v. Johns–Manville Sales Corp.,* 826 F.2d 33 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).

they ever existed, when the nonmoving party could sit back and simply poke holes in the moving party's summary judgment motion." *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990).

■ During its analysis, this court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–255, 106 S.Ct. at 2512–14.

The 1986 Supreme Court trilogy was re-examined in *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can be said for *Kodak* is that it did not tinker with *Celotex* and *Anderson*, and possibly involves an attempt to clarify *Matsushita*. This view is well supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441 (1992).

■ The general rule regarding employment discrimination under the ADA is found at 42 U.S.C. § 12112(a), which states as follows:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

"Qualified individual with a disability" is defined in 42 U.S.C. § 12111(8) as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires," and the regulations promulgated by the Department of Labor to interpret the ADA further explain that the qualified individual with a disability is one who has the requisite skill, experience, education and other job-related requirements and who can, with or without reasonable accommodation, perform the essential functions of such position. 29 C.F.R. § 1630.2(m). "Disability" is then defined in 42 U.S.C. § 12102(2) as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individuals; (B) a record of such an impairment; or (C) being regarded as having such an impairment." To prove that he is entitled to relief under the ADA, Hites must establish two components; first that he has a qualifying physical or mental impairment, and second that his qualifying impairment substantially limited one or more of his major life activities, or that Patriot believed his impairment substantially limited one or more of his major life activities. *Piquard v. City of East Peoria*, 887 F.Supp. 1106 (C.D.Ill. 1995). Assuming that Hites' knee injury is a qualifying physical impairment, the question becomes, does that impairment substantially limit one or more of his major life activities.

■ The EEOC regulations define "substantially limits" in 29 C.F.R. § 1630.2(j) as

(1)(i) unable to perform a major life activity that the average person in the general population can perform; or

(ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1613.702(c) further defines "major life activities" as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Thus, if plaintiff's knee injury renders him unable to perform one or more major life activities or significantly restricts his ability to do so, then his impairment is one which substantially limits him, and he is a qualified individual with a disability. Hites' physician, Dr. Louis Sfreddo, stated in his deposition that plaintiff was able to stand, squat, bend, lift 100 pounds and run, all of which are major life activities which require use of the knee. Additionally, Hites testified in his deposition that he was able to walk, stand and stoop, and further testified that he plays softball, baseball, basketball, and that

he bowls on a regular basis, all of which activities involve some use of the knee. While Hites states in his affidavit and in answers to interrogatories that he is restricted in his ability to run, lift up and squat, this effort to "manufacture an issue of fact by adding the gloss of a subsequent affidavit to an earlier deposition is to no effect." As [the Seventh Circuit] said in *McCarthy v. Kemper Life Ins. Companies,* 924 F.2d 683, 687 (7th Cir.1991), one cannot by affidavit "effectively oppose a motion for summary judgment by contradicting his own deposition testimony." *Cherry v. American Tel. & Tel. Co.* 47 F.3d 225, 232 (7th Cir.1995). Thus, this court is convinced there is no question that Hites' knee injury does not substantially limit any of his major life activities and thus is not a disability under 42 U.S.C. § 12102(2)(A).

 The other manner in which Hites can be found to have a disability is if he was regarded by Patriot as having an impairment which would substantially limit one or more of his major life activities. 42 U.S.C. § 12102(2)(C). To prove that Patriot regarded him as disabled, Hites must prove that Patriot knew of his injury and believed that he was substantially limited because of the injury. *Hamm v. Runyon,* 51 F.3d 721 (7th Cir.1995). There is no question that Patriot knew of his injury; the injury had occurred at Patriot's facility, and Patriot's insurance carrier had been paying out on Hites' worker's compensation claim. Thus, the question is, did Patriot believe Hites was substantially limited because of the injury. Hites' physician had informed Patriot that Hites was released to work as of September 13, 1993. Hites stated in his deposition that he informed Flavian Arseneau, the plant manager at Lincoln Park, that he would be required to wear his knee brace while working, but that he had no other restrictions. Hites also stated that upon mentioning this to Arseneau, Arseneau "kind of pulled back a little bit and looked at me a little funny and then, 'Oh, okay.'" Hites Dep. at 57. Given Patriot's knowledge that Hites had been released to work by his doctor, this look by Arseneau is insufficient to prove that Patriot believed Hites to be disabled. Therefore, Hites' claim under 42 U.S.C. § 12102(2)(C) fails as well.

## IV. Conclusion

Even when viewing the evidence in the light most favorable to plaintiff, it is clear that there is no genuine issue of fact as to whether Hites was disabled or perceived to be disabled in the fall of 1993; he was not. Therefore, Patriot's Motion for Summary Judgment is **GRANTED.** The clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**