Darryl N. **SMITH**

v.

**UNITED PARCEL SERVICE.**

No. Civ.A. G–98–408.

United States District Court,
S.D. Texas,
Galveston Division.

June 3, 1999.

---

David A Jameson, Attorney at Law, Galveston, TX, for David Jameson, mediator.

Kathrine B Schmitt, Attorney at Law, Houston, TX, for Darryl N Smith, plaintiff.

Teresa S Valderrama, Baker & Botts, Houston, TX, for United Parcel Service, defendant.

## *ORDER GRANTING MOTION FOR SUMMARY JUDGMENT*

KENT, District Judge.

Plaintiff Darryl Smith brings claims against his former employer, United Parcel Service of Ohio, Inc. ("UPS"). Smith alleges that he was discriminated against and retaliated against in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. Now before the Court is Defendant's Motion for Summary Judgment, filed April 20, 1999. For the reasons set forth below, Defendant's Motion is **GRANTED.**

### I. FACTUAL BACKGROUND

Smith worked at UPS's Stafford facility as a delivery or "package car" driver. On February 4, 1994, he sustained a knee injury that ultimately required two knee operations. As of November 25, 1996, Smith's doctor permanently restricted him to light duty, which allowed him to perform only 40–50 of the 70–100 stops per day that package car drivers are required to make. In light of this medical restriction, Smith does not contest that he is unable to perform the package car driver position, with or without reasonable ac-

commodation. Instead, Smith argues that UPS was obligated under the ADA to provide him with a different full-time position that he could perform.

UPS employs many bargaining unit employees in its delivery operations, and these employees have distinct jobs, titles, and duties, which are prescribed by contract. The package car driver position and all part-time positions involving the movement of packages are covered by a collective bargaining agreement ("CBA") between UPS and the Teamsters, Smith's union. Under the CBA, employees accrue "center seniority." This means that rights and privileges *vis a vis* other bargaining unit employees are seniority based and driver seniority is tied to the specific center into which the driver is hired or has bid. Accordingly, Smith has seniority only at the Stafford facility. Furthermore, while UPS employs many part-time bargaining unit employees in its delivery operations, the only full-time bargaining unit jobs at the Stafford facility are the positions of mechanic, package car driver, and feeder driver.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by pointing out to the Court that there is an absence of proof on any essential element of the nonmovant's case. *Id.*, 477 U.S. at 325, 106 S.Ct. at 2554. Once this burden is met, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead must come forward with specific facts to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (citing FED.R.CIV.P. 56(e)). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## III. DISCRIMINATION CLAIM

■ The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability … in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prevail on his ADA claim, Plaintiff must prove 1) that he has a "disability," 2) that he is "qualified" for the job, and 3) that an adverse employment decision was made solely because of his disability. *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir.1996), *Rios v. Indiana Bayer Corp.*, 965 F.Supp. 919, 921 (S.D.Tex.

1997). A "disability" is defined as "a physical or mental impairment that *substantially limits one or more of the major life activities* of such individual," a "record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2) (emphasis added).

Included in the EEOC's definition of "major life activities" are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). To be considered substantially limited in one of these activities, an individual must be either (i) unable to perform a major life activity that the average person in the general population can perform, or (ii) significantly restricted as to the condition, manner or duration under which he can perform a particular major life activity as compared to an average person in the general population. 29 C.F.R. § 1630.2(j)(1).

 Smith contends that he has a substantially limiting impairment. The record does not support this conclusion, however. Smith relies exclusively upon his doctor's conclusion that he has a 40% lower left extremity impairment and a whole body impairment rating of 13%. Translated, this apparently means he should engage in the tasks of squatting and climbing only infrequently and he should never crawl. By contrast, the range of activities he can still perform is broad. According to Smith's own deposition, he feeds and clothes himself, performs strenuous yardwork (including weekend yard mowing and cutting waist-high hedges), climbs three and one half flights of stairs in one minute, jumps so that his feet leave the ground, drives extended distance (including 32 to 36 hours without an overnight stop from Houston, Texas to Monterrey, California), shops, works out in a gym (including riding a stationary bicycle), lifts 70 pounds easily and can lift 90 pounds, can study and learn new skills, and regularly works 10 to 12 hours per day for his current employer. In light of case law from the United States Court of Appeals for the Fifth Circuit

which establishes that even serious impairments do not necessarily rise to the level of a "disability," Plaintiff's impairment does not, as a matter of law, rise to the level required to fall within the ADA's definition of a substantial impairment of a major life activity. *See, e.g., Talk v. Delta Airlines, Inc.,* 165 F.3d 1021, 1025 (5th Cir.1999) (holding that a leg deformity which caused moderate difficulty in walking and a limp resulting in walking at a "significantly slower pace than the average person" were not substantial limitations in the major life activity of walking); *Bridges v. City of Bossier,* 92 F.3d 329, 334 (5th Cir.1996), *cert. denied,* 519 U.S. 1093, 117 S.Ct. 770, 136 L.Ed.2d 715 (1997) (hemophilia that excluded plaintiff from his chosen occupational field of firefighter is not a substantial limitation on the major life activity of working); *Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 759 (5th Cir.1996) (chronic ankle problems including gout, bone spurs, and ligament damage that required plaintiff to miss more than one year of work were not severe or chronic enough to qualify as a disability); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 191 (5th Cir.1996) (breast cancer requiring chemotherapy and involving significant side effects from treatment did not qualify as a disability); *Oswalt v. Sara Lee Corp.,* 74 F.3d 91, 93 (5th Cir.1996) (high blood pressure not substantially limiting); *see also Penny v. United Parcel Service,* 128 F.3d 408, 415 (6th Cir.1997) ("moderate difficulty or pain experienced while walking does not rise to the level of a disability"); *Kelly v. Drexel Univ.,* 94 F.3d 102, 106 (3d Cir.1996) (inability to walk more than one mile and complete inability to jog not a disability as a matter of law). Accordingly, UPS's Motion for Summary Judgment on Plaintiff's discrimination claim is **GRANTED** as Plaintiff has failed to establish a *prima facie* case of discrimination under the ADA.

 Additionally and alternatively, even if Plaintiff is a "qualified individual"

under the ADA, it is apparent that UPS has attempted to reasonably accommodate Plaintiff. Under the CBA, Smith is entitled to displace any less senior employee in a position for which he is qualified because he is permanently disabled from his job as a package care driver. According to Smith's physician, Smith can perform the essential functions of a car washer, air driver, and feeder driver. Smith has provided no summary judgment evidence to demonstrate that the positions of air driver or feeder driver were available to someone with his level of seniority during the time period UPS sought to reassign him. On three separate occasions, Smith was offered the only available position he could perform, that of part-time car washer at the Stafford facility. Each time he refused the position demanding full-time work with full benefits. Smith now contends that he would have accepted two part-time positions combined to create a full-time position. There is no evidence, however, to indicate that Smith raised this possibility to UPS at the time or even that two-part time positions were available at any one time that could have been combined to create full-time work. Regardless, neither the ADA nor the CBA requires that UPS cobble together two part-time jobs to create a full-time job, an option not generally available to other employees, as a "reasonable accommodation." *See Fedro v. Reno,* 21 F.3d 1391, 1396 (7th Cir.1994) ("Changing a part-time job (or two part-time jobs) into a full-time job does nothing to accommodate [the plaintiff's] handicap, and would not provide any privilege or benefit of employment which other non-handicapped employees were receiving.") An employer's obligations to accommodate are not unlimited. *See, e.g., Daugherty v. City of El Paso,* 56 F.3d 695, 700 (5th Cir.1995); *McAlpin v. National Semiconductor Corp.,* 921 F.Supp. 1518, 1525 (N.D.Tex.1996); EEOC Enforcement Guidance, 405 Fair Empl. Prac. Man. (BNA) 7391, 7400 (Sept. 3, 1996) ("The ADA does not require an employer to create a new position or to bump another employee from his/her position."). The Court therefore finds as a matter of law that UPS provided Plaintiff with reasonable accommodations. in compliance with the ADA, and for this reason also Plaintiff's claim is **DISMISSED WITH PREJUDICE.**

## IV. RETALIATION CLAIM

Smith claims he was retaliated against for filing discrimination and retaliation charges with the EEOC on August 14, 1997, and May 27, 1998. In order for an employee to establish a *prima facie* case of retaliation, that employee must prove 1) that he engaged in activity protected by Title VII; and 2) that an adverse employment action occurred; and 3) that there is a causal connection between the participation in the protected activity and the adverse employment decision. *See, e.g., Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1089–90 (5th Cir.1995). Smith offers no evidence of an adverse employment action, other than UPS's refusal or inability to offer him two combined part-time jobs. UPS, as previously stated, had no obligation in this case to combine two part-time jobs for Smith, thus their failure to so does not constitute an adverse employment action. Accordingly, Plaintiff has failed to make out a *prima facie* case of retaliation under the ADA, and Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim is hereby **GRANTED.**

## V. CONCLUSION

For the reasons set forth above, Defendant UPS's. Motion for Summary Judgment is hereby **GRANTED** and all claims are **DISMISSED WITH PREJUDICE.** All parties are **ORDERED** to bear their own taxable costs and attorney's fees incurred herein to date.

**IT IS SO ORDERED.**