NUMBER 13-99-032-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


ROEL GARCIA
, Appellant,


v.



WILLIAM STUART ALLEN, ET AL.
, Appellees.

___________________________________________________________________


On appeal from the 105th District Court


of Kleberg County, Texas.


___________________________________________________________________


O P I N I O N



Before Justices Dorsey, Chavez, and Rodriguez


Opinion by Justice Dorsey



 Roel Garcia was hired to work as an analyzer technician by
Hoechst Celanese Corporation in 1991. When he was hired, he was
without a kneecap in his left knee. It had been removed as a result of
a previous job-related injury he sustained in 1986 while working for a
different employer. Hoechst Celanese knew at the time it hired Garcia
that he did not have the kneecap.

 In 1997, Garcia had another surgery on his knee. His doctor
placed him on permanent restrictions that prohibited him from climbing,
squatting, kneeling and crawling. Celanese terminated him after that
surgery.(1) Garcia contends that he was terminated not because of his
diminished ability to perform the essential functions of his job, but
rather, he was terminated as a part of a vendetta propagated against
him by his two supervisors. After his termination, Garcia brought suit
against the corporation and the two supervisors (hereinafter collectively
referred to as "Celanese") for disability discrimination, negligence, fraud,
defamation, and workers' compensation retaliation.

 The trial court granted summary judgment in favor of Celanese on
all causes of action.(2) Garcia moved for new trial, in part on the basis of
newly discovered evidence. The trial court denied his motion for new
trial, and Garcia timely perfected this appeal. He brings five points of
error, challenging the trial court's grant of summary judgment on the
negligence, defamation, discrimination and retaliation causes of action,
and for its denial of his motion for new trial.

I. Negligence


 First, Garcia argues the trial court erred in granting summary
judgment against him on his common law negligence cause of action. 
We disagree.

 Garcia contends that he was injured by Celanese as a result of the
negligent conduct of its supervisors in "dishonestly reporting Garcia's
job performance." The gist of his cause of action is that although he
was able to adequately perform his job functions despite his knee
injury, his supervisors falsely reported that he was unable to perform
them. He contends that the corporation was thereby negligent in its
supervision and hiring of its employees. He argues that Celanese owes
a duty to its employees to hire and retain supervisors who will not
cause harm or injury to its other employees. Also, he argues that the
two supervisors owed him a duty to truthfully report his job
performance and capability when the corporation requested them to
make a report. Finally, he contends that the corporation had a duty to
adequately investigate the supervisor's reports regarding his job
performance or capability.

 We hold that the trial court was correct in granting summary
judgment against Garcia on his common law negligence cause of action
because Celanese did not owe to Garcia the duties he alleges. The
existence of a duty is an essential element of a negligence cause of
action. See Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.
1995). Thus, the mere failure to exercise reasonable care does not ipso
facto give rise to a cause of action for negligence. Cf. Praesel v.
Johnson, 967 S.W.2d 391, 394 (Tex. 1998) (noting that the elements
of a negligence cause of action are (1) a legal duty; (2) breach of that
duty; and (3) damages proximately resulting from the breach). The
nonexistence of a duty ends the inquiry into whether negligence liability
may be imposed. Van Horn v. Chambers, 970 S.W.2d 542, 544 (Tex.
1998). The existence of a duty is a threshold question of law. Id.; St.
John v. Pope, 901 S.W.2d 420, 424 (Tex.1995); Bird v. W.C.W., 868
S.W.2d 767, 769 (Tex.1994).

 A. Duty to Investigate Claims Regarding an At-Will Employee
Prior To Termination


 We hold that an employer has no duty to investigate information
about an at-will employee prior to terminating that employee. To
impose upon employers a previously unrecognized duty runs the risk of
abrogating the traditional at-will employment relationship, which is the
norm in Texas. Cf. City of Midland v. O'Bryant, No. 97-0954, 2000 WL
351205 at *5 (Tex. April 6, 2000). Absent a contract, the relationship
between worker and employer is "at will," except for a few very narrow
exceptions, with each party being able to end it at any time without
reason or justification. See Winters v. Houston Chronicle Pub. Co., 795
S.W.2d 723, 726 (Tex. 1990); East Line & R.R.R. Co. v. Scott, 72 Tex.
70, 10 S.W. 99, 102 (1888); see also Sabine Pilot Service, Inc. v. Hauck,
687 S.W.2d 733, 735 (Tex. 1985) (recognizing a narrow exception for
an employee discharged for the sole reason of refusing to perform an
illegal act). The Texas Supreme Court has refused to impose a general
duty of good faith and fair dealing upon employers under an at-will
employment agreement, stating:

 A court-created duty of good faith and fair dealing would
completely alter the nature of the at-will employment
relationship, which generally can be terminated by either
party for any reason or no reason at all, and we accordingly
decline to change the at-will nature of employment in Texas.


City of Midland v. O'Bryant, No. 97-0954, 2000 WL 351205 at *5.

 This court has already held that an employer owes no duty to
investigate allegations against an employee before terminating the
employee. Rios v. Texas Commerce Bancshares, Inc., 930 S.W.2d 809,
816 (Tex. App.--Corpus Christi 1996, writ denied); see also Palmer v.
Miller Brewing Co., 852 S.W.2d 57, 63 (Tex. App.--Fort Worth 1993,
writ denied) (holding that employer has no duty to investigate reasons
for chronic absences prior to terminating employee). An employer does
not have to justify the reasons it terminated an employee under an at-will employment contract. We hold that Celanese had no duty to
investigate Garcia's physical ability to perform his job functions prior to
terminating his employment.

 B. Negligent Hiring, Supervision, and Retention

 Next, Garcia urges that the well-established common law doctrine
regarding negligent hiring and supervision of employees imposed a duty
upon Celanese corporation to exercise reasonable care in supervising
Garcia's supervisors so that they did not cause injury to Garcia. Under
that doctrine, 

 an employer has a duty to adequately hire, train, and
supervise employees. The negligent performance of those
duties may impose liability on an employer if the
complainant's injuries result from the employer's failure to
take reasonable precautions to protect the complainant from
the misconduct of its employees.


Castillo v. Gared, Inc., 1 S.W.3d 781, 786 (Tex. App.--Hous. [1st Dist.]
1999, pet. denied) (citing Mackey v. U.P. Enterprises, Inc., 935 S.W.2d
446, 459 (Tex. App.--Tyler 1996, no writ)); accord Golden Spread
Council, Inc. v. Akins, 926 S.W.2d 287, 294 (Tex. 1996); Verinakis v.
Medical Profiles, Inc., 987 S.W.2d 90, (Tex. App.--Houston [14th Dist.]
1998, pet. denied); Houser v. Smith, 968 S.W.2d 542, 544 (Tex.
App.--Austin 1998, no pet.); Robertson v. Church of God, Intern., 978
S.W.2d 120, 124 (Tex. App.--Tyler 1997, pet. denied); Restatement
(Second) of Torts § 315.

 At first blush, Garcia's claims do appear to be governed by this
doctrine. However, we do not believe this is an appropriate application
of the doctrine of negligent supervision. Garcia has cited us to no case
where this doctrine was imported into a similar fact scenario. And we
find that if we were to hold that the failure to adequately supervise
management-level employees resulting in the termination of an
employee without adequate investigation were actionable under this
doctrine, we would be again abrogating the traditional at-will
employment relationship. A contested firing can virtually always be re-cast as a "failure, on the part of the employer, to adequately supervise
the personnel in charge of hiring and firing."

 The rule regarding adequate supervision and hiring of employees
typically has been applied in situations that either involve physical
danger or where the alleged inadequate supervision caused harm to
third persons rather than co-workers. See Sibley v. Kaiser Found.
Health Plan of Tex., 998 S.W.2d 399, 403­04 (Tex. App.--Texarkana
1999, no pet.) (holding that the doctrine extends only to prevent the
employee or independent contractor from causing physical harm to a
third party); Verinakis, 987 S.W.2d at 97­98 (duty under theory of
negligent supervision only extends to prevent the employee or
independent contractor from causing physical harm to a third party); cf
Hendrix v. Bexar County Hosp. Dist., No. 04-98-00833-CV, 2000 WL
36098, (Tex. App.--San Antonio December 30, 1999, no pet. hist.)
(involving sexual assault upon patient by hospital employee); Duran v.
Furr's Supermarkets, Inc., 921 S.W.2d 778, 789-90 (Tex. App.--El Paso
1996, no writ) (involving assault and battery of a customer). Under that
theory, Garcia's claim would fail because he has not alleged physical
injury in this case.

 The San Antonio court of appeals took a different tack in holding
that an employer cannot be held liable for the negligent hiring, retaining,
training, or supervising of its employee unless the employee committed
an actionable tort. See Gonzales v. Willis, 995 S.W.2d 729, 739 (Tex.
App.--San Antonio 1999, no pet.) (where employee made sexual
advances on job applicant, but where employee's conduct did not rise
to the level of intentional infliction of emotional distress, or any other
recognized tort).(3) That court stated:

 This rule comports with the fundamental tort principle that
a person is not liable for negligence, no matter how
egregious, unless the negligence causes a legally
compensable injury. See W. Page Keeton et al., Prosser and
Keeton on the Law of Torts § 30, at 165 (5th ed.1984). In
the context of negligent hiring claims, if the employee did
not commit an actionable tort, the plaintiff has not been
injured in the eyes of the law; therefore, the employer's
negligence has not caused a legally compensable injury.


We have already held that failing to investigate the ability of an
employee to perform his job duties before terminating him is not an
actionable tort. Thus, under the San Antonio court's rationale, Garcia's
claim would also fail.

 This court would be, effectively, creating a new common law tort
which has until now been expressly rejected if we interpret the
negligent supervision doctrine as encompassing a duty that employers
supervise their employees in a manner that prevents the "wrongful
termination" of other employees. We hold that employers do not have
a duty to supervise their employees in a manner that prevents other
employees from being terminated without sufficient justification for the
termination. Accordingly, no cause of action for negligence will lie in
that scenario. To hold otherwise would encroach into the employer's
absolute right to terminate an at-will employee.

 We affirm the trial court's grant of summary judgment in favor of
Celanese on Garcia's negligence cause of action.

II. Defamation Claims


 Next, Garcia claims the trial court erred in granting summary
judgment in favor of defendants on his defamation claims. Specifically,
Garcia alleges that his two supervisors, Garcia and Allen, made
defamatory statements about him that he could not do his job with
restrictions on his climbing, kneeling, and squatting, when they actually
knew that to be false. Garcia alleges that he had identical job
restrictions prior to the surgery, and that his supervisors were aware of
this when they said he could no longer perform his job. Garcia also
alleges that those statements were made with malice.

 Defendants Allen and Garcia admit to making the statements, but
counter that the statements were true.(4) Because we find that Celanese
has conclusively established the affirmative defense of truth, we affirm
the trial court's ruling.

 Truth is a complete defense to defamation. Randall's Food Mkts.,
Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995). Because it is an
affirmative defense, the defendant bears the burden of establishing that
the alleged defamatory statements were true. Knox v. Taylor, 992
S.W.2d 40, 54 (Tex. App.--Houston [14th Dist.] 1999, no pet.); see Tex.
R. Civ. P. 166a(c); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223
(Tex. 1999). A showing of substantial truth at a summary judgment
hearing will defeat a defamation claim. McIlvain v. Jacobs, 794 S.W.2d
14, 15 (Tex. 1990). We hold that Celanese met its burden.

 Celanese attached to its summary judgment motion the affidavits
of Allen and Garcia, Roel Garcia's supervisors. Allen's affidavit stated:

 Roel Garcia went out on a medical leave of absence
sometime in April 1997 and it is my understanding that he
had knee surgery in May 1997. Sometime in June-July
1997, I became aware that Roel's doctor had placed
permanent restrictions on him. He was not supposed to
kneel, squat or climb. I was asked by Curtis Blackburn,
Section Leader in Human Resources, whether I thought Roel,
with these restrictions, could perform all of the essential job
duties of a Process Analyzer Mechanic. I consulted with
Hector Garcia and we discussed Roel's restrictions and the
essential job requirements of the position. We were in
agreement. In our opinion, Roel, with his restrictions, could
not perform all of the essential job duties required of a
Process Analyzer Mechanic. That was my honest opinion
then, and it is still my honest opinion today. Essential job
duties of the position require a person to squat, kneel and
climb. I conveyed our opinion (mine and Hector's) to Curtis
Blackburn.


Garcia's affidavit concurred.

 Also attached as summary judgment evidence was a letter dated
July 2, 1997, from Dr. William E. Swan Jr., who treated Roel Garcia. 
It stated:

 Mr. Garcia has been under my care for significant problems
with his left knee. This patient has had a patellectomy of the
left knee. He has had a medial meniscectomy and he has
severe chondromalacia of the distal end of the femur
secondary to the severe chondromalacia of the patella which
had actually led to the patellectormy. 


 At the present time this patient has severe pain and this pain
in a knee without a patella precludes him from squatting or
kneeling, from climbing and from squatting and crawling. 
This will be a permanent restriction.


 I anticipate that this young man will probably require a total
knee replacement some time between the ages of 45 and 50. 
I am not in favor of performing a total knee replacement on
someone as young as he is due to the fact that these knee
replacements do not last forever.


 Again, at this point again (sic) I anticipate that these
limitations are permanent. If you have any further question,
feel free to contact me.


Celanese also provided summary judgment evidence stating that Roel
Garcia's restrictions would prevent him from being able to do the job of
an analyzer mechanic. Garcia did not controvert this evidence, but
urges that with accommodations, he can perform his job.

 Even Roel Garcia's own affidavit indicates that the statements
made by his supervisors regarding his medical condition were true. He
stated:

 In or about May 1986, I had a patellectomy (removal of
kneecap) of the left knee. I began working with the company
on July 15, 1991. I had not experienced any problems with
my knee that prevented me from being functional in my job. 
I was able to perform some duties that involved climbing;
however, I was unable to craw, kneel, or squat without
difficulties. The group that I worked within implemented a
general rule that paired two employees to an area. Any time
a job called for a physical activity that I was unable to do, my
partner performed the duty. This arrangement worked out
very well and I had not experienced any negative complaints
from my fellow co-workers. My supervisor nor any other
crew leader ever indicated that my restrictions was a
problem. In April of 1997, the pain and discomfort in my
knee had become unbearable. I informed the company nurse
that I would need to seek medical assistance. . . . In May
1997, I had arthroscopic surgery on my left knee. I was told
that I would need a total knee replacement; however,
because of my age the doctor wanted to postpone the
procedure. I recuperated for a short time and in June 1997
the doctor issued me a release back to work with restrictions
not to climb, kneel, squat, or crawl. The company refused
to allow me to work. . . . I have suggested that I be allowed
to perform the duties of a personnel safety monitor, S.O.P.
writer, or any other duties within my unit that would not
involve my medical restrictions. I know that the type of work
that I suggested that I be allowed to perform is available. . .
. I believe that I am being discriminated against because of
my medical condition with my left knee.


 Celanese also presented summary judgment evidence showing
that Garcia's restrictions were not always what they were after his
1997 surgery. In 1994, after Garcia re-injured his knee while working
at Celanese, his doctor's release to return to work stated that Garcia
"should perform full duties except no climbing." Two months later, the
doctor released him for full duty. These notes were signed by the same
doctor who, in 1997, restricted him permanently from climbing,
squatting, crawling or kneeling. Moreover, Celenese presented
evidence that Garcia's knee was a chronic problem.

 Garcia produced no evidence to contradict this evidence. In fact,
Garcia concedes the degenerative progression of his knee problem. He
stated in 1997, on an intake questionnaire for the City of Corpus Christi
Human Relations department that:

 I had a work related injury on 1-4-94 where I twisted my
knee slipping on glycol. At that time I had arthroscopic
surgery on my knee. The Company had no problem letting
me back in the day after surgery (crutches, stitches, etc.). 
After recovering from the surgery, I went back to full duty,
but continued having problems with my knee. Still could not
kneel or crawl, and having problems climbing. Over the
course of the three years continued problems with my knee,
receiving cortisone injections and different medications. 
From the time of returning to full duty worked in an area that
requires lots of climbing. In 6-96 it got to the point where I
could no longer climb. So I was moved to an area with less
climbing required. At that time whenever there was
climbing to be done my partner would climb. From that time
I continued to have problems with my knee. In April of 1997
the pain was so bad I could not function anymore.


 The undisputed summary judgment evidence shows that the
alleged defamatory statements were empirically true. The fact that
Garcia was never able to fully perform all the functions required by his
job does not render untrue the later statement that he cannot perform
the functions of his job. The undisputed evidence shows that Garcia's
knee condition grew progressively worse, and the restrictions placed
upon him in 1997 were more severe than they had ever been. Both of
Garcia's supervisors stated that with those restrictions, Garcia could not
perform the essential functions of a process analyzer mechanic.

 In his response, Garcia does not challenge those facts. Rather, he
focuses on evidence that he contends shows malice on the part of his
supervisors. The closest he comes to controverting Celanese' evidence
on the issue of truth is the following unsupported statement in his brief:

 Plaintiff has set forth his prima facie case of slander by the
communications made by Stewart Allen and Hector Garcia
to the effect that Roel could not do his job with climbing,
kneeling, or squatting restrictions when they actually knew
that he did his full duties in January of 1995 without almost
identical restrictions. They knew their statements to Curtis
Blackburn were false.


This is insufficient to raise a fact issue regarding Celanese's affirmative
defense of truth. We affirm the trial court's summary judgment on the
defamation claims.

III. Discrimination Cause of Action


 Next, Garcia contends the trial court erred in granting summary
judgment against him on his discrimination claim. Garcia contends that
he was the victim of discrimination because of a physical disability,
which is prohibited by the Texas Commission on Human Rights Act
(TCHRA). Tex. Labor Code Ann. § 21.001 et. seq. (Vernon 1996). 
Celanese counters that Garcia does not have a "disability" as defined by
the Act, that his physical condition impairs his ability to reasonably
perform his job, and that the accommodations sought by Garcia are not
required by the Act.

 1. Is Garcia "Disabled" Under the Statute?

 Among other things, the TCHRA prohibits an employer from
discharging or otherwise discriminating against an employee because
of a disability. Tex. Labor Code Ann. § 21.051(a). To set up a prima
facie case of discrimination, a plaintiff must make a threshold showing
that he has a disability. Morrison v. Pinkerton Inc., 7 S.W.3d 851,
854­55 (Tex. App.--Houston [1st Dist.] 1999, no pet. h.). An individual
can be classified as disabled under any one of the three definitions of
the term contained in the Act. Id. "Disability" is defined as (1) a
physical or mental impairment that substantially limits one or more of
the major life activities of the individual, (2) a record of such an
impairment, or (3) being regarded as having such an impairment. Tex.
Labor Code Ann. § 21.002(6) (Vernon's Supp. 2000).

 A "major life activity" is considered to be something akin to
"caring for oneself, performing manual tasks, walking, seeing, hearing,
speaking, breathing, learning and working." Hartis v. Mason & Hanger
Corp., 7 S.W.3d 700, 703 (Tex. App.--Amarillo 1999, no pet. h.)
(quoting, 29 C.F.R. § 1630.2(i)). The Code of Federal Regulations
provides the example of: "A diabetic who without insulin would lapse
into a coma would be substantially limited because the individual
cannot perform major life activities without the aid of medication." 29
C.F.R. § 1630.2(j). Garcia contends that the loss of his kneecap is a
such a disability. We disagree.

 "The determination of whether an individual is disabled is
necessarily fact intensive." Primeaux v. Conoco, Inc., 961 S.W.2d 401,
404 (Tex.App.--Houston [1st Dist.] 1997, no writ). In determining if one
is substantially limited in a major life activity, we consider:

 (i) The nature and severity of the impairment;


 (ii) The duration or expected duration of the impairment; and

 

 (iii) The permanent or long term impact, or the expected
permanent or long term impact of or resulting from the
impairment. 


Norwood v. Litwin Engineers & Constructors, Inc., 962 S.W.2d 220,
224 (Tex. App.--Houston [1st Dist.] 1998, pet. denied) (quoting 29
C.F.R. § 1630.2(j)(2) (1995)).

 The Texas Supreme Court has noted that:

 An examination of the entire Act in the Human Resources
Code reveals that the legislature was concerned with those
physical and mental defects which are serious enough to
affect a person's use of public facilities and common carriers,
ability to obtain housing, and the ability to cross the street. 
The intent of the Act was to protect those impaired to the
point that they might not be able to participate in the social
or economic life of the state, achieve independence, or
become gainfully employed, without this protection. The
legislature obviously was not concerned with minor physical
or mental defects.


Chevron Corp. v. Redmon, 745 S.W.2d 314, 317 (Tex. 1987).

 Garcia asserts that the deposition testimony of Dr. Swann
establishes that he has a disability that substantially limits his ability to
perform a major life activity. The doctor's testimony contained the
following colloquy:

 Q. I'd like to read you a . . . three part definition. . . . If you
assume with me that a person is 

considered disabled
if he or she has an impairment that substantially limits
one or more of the individual's major life activities, and
that the major life activities refers to those basic
activities that the average person in the general
population can perform with little or no difficulty, and
then further assume that major life activities include
caring for oneself, performing manual tasks, walking,
seeing, hearing, speaking, reading, learning and
working, and that major life activities are not limited to
those activities, but may include similar activities, and
then if you can further assume that by the term the
person being substantially limited, that the person is
unable to perform a major life activity that can be
performed by the average person that's in the
population, . . . or else there's a significant restriction
on the condition, the manner, the duration which he
can perform a particular major life activity compared to
the average person in the general population, would
you describe Roel's . . . lack of a kneecap . . . would
you say that based on this definition . . . . that Roel
would be a disabled person under that . . . definition
because of his situation in his knee?

 

 A. Well, yes. I certainly have an opinion in this regard. .
. And the opinion is . . . going to be that he certainly
does not have a normal knee. Okay. And, you know,
he is certainly not going to . . . go out there and play in
the NFL. . . . And when you compare him to a normal
person, he isn't normal, okay, to that extent. Now, I
can't say that he is totally and permanently disabled
where he can't do anything. I mean. . . of course, his
body functions and everything are all working, except
his left knee. . . . And in that regard, he cannot
perform to the extent of a--of a regular person.

 

 Q. Okay. Could he--if her were attempting to be a
lineman for the phone company, climbing telephone
poles and kneeling down to install telephone jacks in
buildings and things like that, could he perform tasks
like that with his knee?

 

 A. I would . . . and I have restricted him to the point that
I do not want him climbing. I do not want him
squatting and kneeling. He couldn't do that.


 Q. Okay. Could he squat and kneel and put on kneepads
or shin guards, rather, and squat down and get on his
knee and play Little League baseball and be the catcher
for his son's team? Things like that?

 

 A. No, sir.

 

 Q. Okay. . . . would you say that he has the ability to
kneel down in church for . . . lengthy periods of time
during worship?

 

 A. I certainly . . . would not recommend that he kneel
down, say for the extent of, say a rosary.

 

 Q. Okay.

 

 A. Something of that nature. I think that we should do
everything we can to stay in communication with the
Almighty, and I've certainly allowed people to kneel to
pray for a short period of time on padded areas. But,
you know, he certainly can't for a prolonged length of
time, And I would actually discourage him, unless it's
just all necessary that he kneel to pray, period.


 Garcia's position is that the life activities he is substantially limited
from performing are climbing, squatting, kneeling and crawling. 
Whether an activity qualifies as a major life activity is determined on
more or less a case-by-case basis. Recently, the federal district court
for the Southern District of New York held that climbing stairs qualifies
as a "major life activity." See Nodelmanv. Gruner & Jahr Usa
Publishing, No. 98 Civ. 1231 (LMM), 2000 WL 502858 (S.D.N.Y. April
26, 2000) at *7. However, Garcia's doctor testified that he could climb
stairs; his restriction is from climbing ladders.

 The Supreme Court has offered some guidance in interpreting this
provision. It stated that:

 "Major life activities" includes functions such as caring for
one's self, performing manual tasks, walking, seeing,
hearing, speaking, breathing, learning, and working. 1 CFR
§ 457.103 When referring to the major life activity of
working, the Equal Employment Opportunity Commission
(EEOC) defines "substantially limits" as: "significantly
restricted in the ability to perform either a class of jobs or a
broad range of jobs in various classes as compared to the
average person having comparable training, skills and
abilities." §29 CFR 1630.2(j)(3)(i) (1998). The EEOC further
identifies several factors that courts should consider when
determining whether an individual is substantially limited in
the major life activity of working, including "the number and
types of jobs utilizing similar training, knowledge, skills or
abilities, within [the] geographical area [reasonably
accessible to the individual], from which the individual is
also disqualified." § 1630.2(j)(3)(ii)(B). Thus, to be regarded
as substantially limited in the major life activity of working,
one must be regarded as precluded from more than a
particular job. See § 1630.2(j)(3)(i) ("The inability to perform
a single, particular job does not constitute a substantial
limitation in the major life activity of working").


Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S.Ct. 2139, 2142,
144 L.Ed.2d 450 (1999).

 The southern district of New York found that an obese plaintiff
was not substantially limited in a major life activity even though she
could not kneel or bend because of her weight. Hazeldine v. Beverage
Media, Ltd., 954 F. Supp. 697, 704 (S.D.N.Y. 1997); The Fourth Circuit
found that, as a matter of law, a twenty-five pound lifting limitation
does not constitute a significant restriction on one's ability to lift, work,
or perform any other major life activity. Williams v. Channel Master
Satellite Systems, Inc., 101 F.3d 346 (4th Cir. 1996) cert. denied sub
nom, Williams v. Aynet, Inc., 520 U.S. 1240 (1997). In another case,
the Southern District of New York found that an individual's medical
restriction of "no prolonged sitting" did not render her disabled under
the ADA, because it did not substantially limit any major life activity,
including her ability to work. Wernick v. Federal Reserve Bank of New
York, 1995 WL 598973 (S.D.N.Y. Oct. 10, 1995), aff'd, 91 F.3d 379 (2d
Cir. 1996). Closer to home, the Southern District of Texas found that an
employee's knee injury was not a substantially limiting impairment
where the physician limited squatting and climbing and prohibited
crawling, but where the plaintiff's deposition showed that he performs
strenuous yard work, climbs three and one-half flights of stairs in one
minute, and lifts 70 pounds easily. Smith v. United Parcel Service, 50
F.Supp.2d 649 (S.D. Tex. 1999). The Northern District of Indiana found
that a plaintiff's knee injury did not substantially limit major life activities
where, at the time of his physician's deposition, the plaintiff was able
to stand, squat, bend, lift 100 pounds and run. Hites v. Patriot Homes,
Inc., 904 F.Supp. 880, 883-84 (N.D.Ind. 1995). That court also held
that an employee was not disabled where he sought medical attention
for his dislocated knee cap only twice, and within four months after the
injury was able to walk, stand, carry up to 50 pounds and drive a motor
vehicle without restriction, but one year later was still unable to do
repetitive climbing. Kelly v. Woodridge Park District, 1999 WL 203020
(N.D.Ill March 31, 1999) at *2. See also Robinson v. Global Marine
Drilling Co., 101 F.3d 35, 37 (5th Cir. 1996) (holding that individual with
asbestosis who suffered only a few instances of shortness of breath
while climbing stairs was not substantially limited in the major life
activity of breathing); Penny v. United Parcel Serv., 128 F.3d 408, 415
(6th Cir. 1997) (noting that cases make clear that moderate difficulty or
pain experienced while walking does not rise to level of disability);
Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1120 (5th Cir. 1998)
(holding that plaintiff failed to establish that back injury substantially
limited the major life activity of lifting where evidence tended to prove
only that she was restricted from heavy lifting, not the routine duties of
daily living, and was thus insufficient for reasonable jury to find
substantial limitation on major life activity); Miller v. Airborne Exp., 1999
WL 47242, at *5 (N.D.Tex. Jan. 22, 1999) (holding that plaintiff's
preference to lean on rail rather than stand, and of a need to rest or sit
after standing for more than 30 minutes, did not demonstrate that
injury to left knee left him unable to stand or that he was significantly
restricted as compared to the condition, manner, or duration under
which the average person could stand); Dickerson v. United Parcel
Serv., 1999 WL 966430, at *4 (N.D.Tex. Oct. 21, 1999) (holding that
plaintiff failed to raise genuine fact issue that he was substantially
impaired in the major life activity of standing where his physician did
not aver that plaintiff was unable to stand or that he was significantly
restricted with respect to this activity when compared to the average
person, and plaintiff's static standing tolerance of only about five
minutes at a time was still within the normal range, considering
plaintiff's age and sex).

 While loss of a kneecap is a serious impediment, we do not believe
it rises to the level of the type of "disability" contemplated by the anti-discrimination act. Crawling, squatting, climbing ladders and kneeling
are not the same type of "major life activities" as caring for one's self,
performing manual tasks, walking, seeing, hearing, speaking, breathing,
learning, and working. See Sutton, 119 S. Ct. at 2139 (citing 1 CFR §
457.103).

 Even if working in general is the major life activity that Garcia
points to as being substantially limited, we do not believe that his
restrictions rise to the level of significantly reducing his ability to work
in a class of jobs or a broad range of jobs as compared to the average
person having comparable training, skills and abilities. When the
activity is "working," the individual's impairment substantially limits the
activity when the impairment severely restricts or forecloses his ability
to work in general. 29 C.F.R. § 1630.2(j)(3)(i); Redmon, 745 S.W.2d at
318; Azubuike, 970 S.W.2d at 63-64; Chandler v. City of Dallas, 2 F.3d
1385, 1391-93 (5th Cir. 1993), cert. denied 511 U.S. 1011, 114 S.Ct.
1386, 128 L.Ed.2d 61 (1994). In other words, it is not enough that the
employee asserting a disability cannot perform a single or particular job
or a narrow range of jobs. Azubuike, 970 S.W.2d at 63-64. As the
Supreme Court pointed out in Sutton,

 [C]reating physical criteria for a job, without more, does not
violate the ADA. The ADA allows employers to prefer some
physical attributes over others, so long as those attributes do
not rise to the level of substantially limiting impairments. An
employer is free to decide that physical characteristics or
medical conditions that are not impairments are preferable to
others, just as it is free to decide that some limiting, but not
substantially limiting, impairments make individuals less than
ideally suited for a job.


Sutton, 119 S.Ct at 2142-43.

 We hold that Garcia's knee injury does not substantially limit a
major life activity, and is thus, not covered by the anti-discrimination act. 
We affirm the trial court's grant of summary judgment.

IV. Workers' Compensation Retaliation Cause of Action


 Next, Garcia contends that he was fired in retaliation for his filing
of a workers' compensation claim. Texas Labor Code Section 451.001
states:

 A person may not discharge or in any other manner
discriminate against an employee because the employee has:

 (1) filed a workers' compensation claim in good faith;

 (2) hired a lawyer to represent the employee in a claim;

 (3) instituted or caused to be instituted in good faith a
proceeding under Subtitle A; or

 (4) testified or is about to testify in a proceeding under
Subtitle A.


Tex. Lab. Code Ann. § 451.001 (Vernon 1996).

 The employee has the burden of demonstrating a causal link
between the discharge and the filing of the claim for workers'
compensation benefits. McIntyre v. Lockheed Corp., 970 S.W.2d 695,
697 (Tex. App.--Fort Worth 1998, no pet.); Duhon v. Bone & Joint
Physical Therapy Clinics, 947 S.W.2d 316, 318 (Tex.App.--Beaumont
1997, no writ). This causal connection is an element of the employee's
prima facie case and may be established by direct or circumstantial
evidence. McIntyre, 970 S.W.2d at 697; Duhon, 947 S.W.2d at 319. 
Once the employee has established the causal link, the employer bears
the burden to rebut the alleged improper termination by showing there
was a legitimate reason behind it. McIntyre, 970 S.W.2d at 697­98;
Duhon, 947 S.W.2d at 319. Thereafter, in order to survive a motion for
summary judgment, the burden shifts back to the employee to produce
controverting evidence of a retaliatory motive. McIntyre, 970 S.W.2d at
697­98; Duhon, 947 S.W.2d at 319.

 The Texas Supreme Court has offered guidance on how a plaintiff
can establish that causal connection:

 A plaintiff does not have to prove that her discharge was
solely because of her workers' compensation claim. . . . She
merely has to establish the "causal connection" between her
discharge and the filing of a workers' compensation claim as
an element of her prima facie case. . . . Circumstantial
evidence, and the reasonable inferences from such evidence,
can prove the causal connection. . . . Once the link is
established, it is the employer's burden to rebut the alleged
discrimination by showing there was a legitimate reason
behind the discharge. . . . 


 Circumstantial evidence sufficient to establish a causal
link between termination and filing a compensation claim
includes: (1) knowledge of the compensation claim by those
making the decision on termination; (2) expression of a
negative attitude toward the employee's injured condition; 
(3) failure to adhere to established company policies; (4)
discriminatory treatment in comparison to similarly situated
employees; and (5) evidence that the stated reason for the
discharge was false. . . . 


Continental Coffee Products Co. v. Casarez, 937 S.W.2d 444, 450­51
(Tex. 1996) (internal citations omitted).

 We hold that Garcia has failed to offer evidence raising a genuine
issue of material fact with regard to the elements above. In its motion
for summary judgment, Celanese articulated a legitimate
nondiscriminatory reason for terminating Garcia. It offered evidence that
the company has a "restricted duty policy" which states that restricted
duty is only available when the employee is progressing toward
unrestricted duty. While Garcia was allowed to modify his duties prior
to the 1997 surgery, he was not given "light duty" once his doctor
instituted permanent restrictions against him climbing, crawling,
squatting or kneeling. The El Paso court of appeals heard a similar case
where the employee was allowed to perform light duty at one period of
employment, then not allowed later. The court stated:

 [The employee] suggests that evidence of discrimination is
found in the different manner in which the company treated
him before and after he filed the workers' compensation claim
in May of 1989. Following the laceration of his finger in
1988, [the employee] was permitted to work in a light duty
job for several weeks while he recovered. When he
attempted to return to work in 1990, he was informed there
were no light duty jobs available. The employer presented no
evidence that a light duty job existed or was available at any
time after May of 1989. In the absence of any policy or
practice to the contrary, the company's refusal to create a
light duty job for [the employee] does not give rise to an
inference of discrimination or retaliation. Further, both
decisions were made pursuant to the company's light duty
policy which permits a person to return to work if their
recuperation is expected to take less than thirty work shifts. 
[The employee] was given a light duty job in 1988 because it
was believed that he would recuperate from the lacerated
finger in a short period of time, whereas it was apparent that
his recuperation from carpal tunnel syndrome would require
substantially longer. Because there is no evidence of
discriminatory application or impact on workers'
compensation claimants in general or on [the employee] in
particular, we cannot infer a negative attitude or
discrimination in violation of Section 451.001 from the
existence of this otherwise lawful employment policy.


Urquidi v. Phelps Dodge Refining Corp., 973 S.W.2d 400, 405 (Tex.
App.--El Paso 1998, no pet.)

 The only evidence that Garcia has is that the person making the
termination decision knew about his workers' compensation claim. But
the fact that the person making the termination decision had knowledge
of the claim, standing alone, does not satisfy the Continental Coffee
standard. Id. at 404. Rather, it "simply places [Garcia] within the
protected class and must be considered along with the remaining
evidence." Id. at 404. Moreover, an employer is permitted to terminate
an employee who sustains a job-related injury if it ultimately appears
that, due to the nature of the injury, the employee can no longer perform
the essential functions of his position. Burfield v. Brown, Moore & Flint,
Inc., 51 F.3d 583, 590 (5th Cir. 1995); Schrader v. Artco Bell Corp., 579
S.W.2d 534, 540 (Tex.Civ.App.--Tyler 1979, writ ref'd n.r.e.). Garcia has
produced no evidence to establish the causal link between his filing of
the workers' compensation claim and his termination. We overrule this
point of error and affirm the trial court's grant of summary judgment on
Garcia's workers' compensation retaliation claim.

V. Trial Court's Denial of Motion for New Trial


 Finally, Garcia contends the trial court erred in denying his motion
for new trial urged on grounds of newly discovered evidence. Garcia
alleges that a defense witness, Donna Beltran, withheld material
evidence from him by denying any knowledge of the facts surrounding
the release of Theodore Hernandez in her deposition. Garcia contends
that a new trial should have been granted because of the newly
discovered evidence in the form of Theodore Hernandez' affidavit.

 Theodore Hernandez's affidavit stated that he is a former Celanese
employee who worked there almost twenty years, ending in January of
1997. He lost his left arm in an on-the-job accident in 1980, but
continued working there until January of 1997, when he was diagnosed
with degenerative disc disease. After undergoing physical therapy, he
was released to return to work by his doctor, but was told by Donna
Beltran that he could not return to work because of his physical
limitations. She instructed him to see a different doctor for an
evaluation. This doctor said that Hernandez could not return to work
because of his limitations related to his missing arm.

 Hernandez filed suit against Celanese and Donna Beltran was a
witness in the case. Beltran was also one of the persons who notified
Garcia that he would not be allowed to return to work because of his
limitations. Hernandez states that he believes that Celanese is placing
many of its employees on long-term disability in order to reduce its work
force.

 Garcia contends Donna Beltran gave misleading and perjured
testimony regarding Hernandez at her deposition that prevented Garcia
from discovering Hernandez' affidavit. We do not agree that Beltran's
testimony prevented Garcia from obtaining the evidence from
Hernandez. The deposition excerpt that Garcia offered in support of his
motion for new trial states:

 Q. Did any of the policies that you were working under
change between 1991 and 1997 at Celanese about
persons that had physical limitations?

 

 A. Not to my knowledge.

 

 Q. Did management attitudes change during that time
period about people that had physical limitations?


 A. No, sir.

 

 Q. It's my understanding there's a fellow who had an
accident and lost a part of one of his arms and was
recently released from employment with Celanese. 
Have you worked on that case?

 

 A. No, sir. I have not.

 

 Q. Are you aware of any case like that from Celanese
Bishop plant?

 

 A. I know of an individual who had lost an arm. I don't
know the specifics after that.

 

 Q. You didn't do any medical work-up on that investigation
for the company, nothing like that?

 

 A. No, sir.

 

 Q. Communications with the doctors?

 

 A. No, sir.

 

 Q. Are you aware of any other situations where persons
with physical limitations were released from work in the
last--well, I should say two years I guess--in the 1996,
1997 time periods?

 

 A. Was anyone released back to work?

 

 Q. Well, that was released from employment because of
physical restrictions.

 

 A. No.

 

 Q. The only one you know of was Roel?

 

 A. Well, I don't know that he was released for that reason.

 

 Q. You don't know why he was released from
employment?


 A. I don't know that he was released, period.


 Q. Okay. Nobody's told you that he's on a medical leave? 
Maybe it's leave, I'm not sure how they call it now.

 

 A. All I know is that Roel was on sick leave and [end of
excerpt].


 We review denials of motions for new trial based on newly
discovered evidence under an abuse of discretion standard. Jackson v.
Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983); Alvarez v.
Anesthesiology Associates, 967 S.W.2d 871, 882 (Tex. App.--Corpus
Christi 1998, no pet.). In order to obtain a new trial, a plaintiff must
show that: (1) the evidence has come to their attention since the trial; (2)
it was not discovered earlier due to the lack of diligence; (3) the evidence
is not cumulative; and (4) it is so material that it would produce a
different result if a new trial were granted. Jackson, 660 S.W.2d at 809;
Alvarez, 967 S.W.2d at 882. Garcia's argument fails on two points.

 First, Garcia has not shown that he exercised diligence in
attempting to discover the evidence earlier. At Beltran's deposition, he
asked about Hernandez. He could have followed up on that line of
questioning with either Beltran or another witness to discover
Hernandez' name, and then followed up by questioning Hernandez
himself. Indeed, the fact that he knew to ask about Hernandez in that
deposition indicates that he had some knowledge of Hernandez's
situation. There is no indication that Garcia attempted to follow up on
that matter until after summary judgment was granted. We do not
believe that Beltran's deposition testimony represents an attempt to hide
that evidence from Garcia.

 Second, Hernandez's affidavit is not material. The only cause of
action that it might be relevant to is whether the corporation
impermissibly discriminated against Garcia because of a disability. We
have already held that Garcia does not qualify for relief under the
disability statute. Evidence that another person was treated in the same
way that Garcia was treated does not change the fact that the statute
is inapplicable. We overrule Garcia's last point of error, and affirm the
judgment of the trial court in all respects.



 ______________________________

 J. BONNER DORSEY,

 Justice


Publish
.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this 8th day of June, 2000. 

1. Garcia's doctor modified Garcia's restrictions, and he was allowed to
return to work in November of 1998.
2. The trial court granted two summary judgments in this case. The first
disposed of the discrimination, negligence, fraud and defamation claims on
December 18, 1998. Then, approximately one month later, the trial court
granted summary judgment in favor of Celanese on Garcia's retaliation claim. 
The trial court entered a take-nothing judgment against Garcia on February 1,
1999.
3. In the absence of Texas law on the subject, the San Antonio court
looked to the law of other jurisdictions, citing Hays v. Patton-Tully Transp.
Co., 844 F.Supp. 1221, 1223 (W. D. Tenn. 1993); Mulhern v. City of
Scottsdale, 165 Ariz. 395, 799 P.2d 15, 18 (1990); Hogan v. Forsyth Country
Club Co., 79 N.C.App. 483, 340 S.E.2d 116, 123-25 (1986); Louis Marsch, Inc.
v. Pekin Ins. Co., 140 Ill.App.3d 1079, 96 Ill.Dec. 386, 491 N.E.2d 432, 437
(1985). 
4. Celanese also argues that the statements were not defamatory and, at
any rate, were covered by qualified privilege. Because we find the statements
were true, we do not address these issues.